Mary J. ZIOBRON, Appellant–Plaintiff,

v.

Madalyn Kell SQUIRES, M.D., Womens'
Health Partnership, PC., St. Vincent
Hospital & Health Services, Michael
G. Hostetter, M.D., and Associated
Urologists, Inc., Appellees–Defen-
dants.

No. 29A04–0804–CV–235.

Court of Appeals of Indiana.

Oct. 7, 2008.

Publication Ordered Nov. 14, 2008.

Karen Neiswinger, Indianapolis, IN, Attorney for Appellant.

Peter H. Pogue, Catherine L. Kyle, Schultz & Pogue, LLP, Michael Roth, Mallory Reider Inselberg, Eichhorn & Eichhorn, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Mary Ziobron filed a medical malpractice action against Dr. Madalyn Kell Squires, Dr. Michael Hostetter, Women's Health Partnership, P.C., St. Vincent Hospital and Health Services, and Associated Urologists, Inc., for injuries allegedly sustained as a result of surgical operations performed by Dr. Squires and Dr. Hostetter. After Ziobron failed to present an

expert opinion to rebut a medical review panel's unanimous opinion that the doctors exercised the requisite standard of care during the operations, the trial court granted summary judgment in favor of all of the defendants except for St. Vincent Hospital. Ziobron now appeals, arguing that she presented a sufficient expert opinion to survive a summary judgment motion and that, in the alternative, an expert opinion was not required because negligence can be inferred under the doctrine of *res ipsa loquitur*. Dr. Hostetter and Associated Urologists cross-appeal for appellate attorneys' fees, and Ziobron requests attorneys' fees for the first time in her reply brief. Concluding that Ziobron failed to present an expert opinion to rebut the medical review panel's unanimous decision and that negligence cannot be inferred under these facts, we affirm the summary judgment order. Additionally, concluding that neither award of attorneys' fees is warranted, we deny both requests for appellate attorneys' fees.

### Facts and Procedural History

Ziobron met with Dr. Squires, a gynecologist with Women's Health Partnership, in June 2001 for evaluation and treatment of postmenopausal bleeding and a right ovarian cyst. After an examination, Dr. Squires diagnosed several operable gynecological issues. Dr. Squires referred Ziobron to Dr. Hostetter, a urologist with Associated Urologists, for a separate medical complaint. Ziobron subsequently attended an appointment with Dr. Hostetter.

On October 30, 2001, Ziobron underwent surgery at St. Vincent Hospital in Indianapolis. During this surgery, Dr. Squires performed a vaginal hysterectomy with removal of ovaries and fallopian tubes, and Dr. Hostetter performed a bladder sling procedure. In her postoperative report, Dr. Squires reported difficulty accessing Ziobron's left fallopian tube and ovary.

However, Dr. Squires reported that she removed both ovaries and fallopian tubes. The removed tissue was later sent to a laboratory for evaluation, and the pathologist identified only one ovary. Dr. Squires did not notice this observation on the laboratory report. In December 2001, Dr. Squires located a mass on the left side of Ziobron's pelvis during a postoperative examination. An ultrasound revealed a noncystic mass that Dr. Squires believed was a blood clot.

Sometime late in 2001, while relaxing in bed, Ziobron felt a sensation "in or around the area where the bladder sling was performed" of something "pulling away like that of stitches being removed from two pieces of material, 'snapping loose' one by one over a period of a few minutes." Appellant's App. p. 253. Since then, she has experienced complications related to a dropped bladder.

A gastroenterologist treating Ziobron for other symptoms in 2002 noticed what he believed was a retained left ovary. After learning of this, Dr. Squires suggested a laparoscopy to Ziobron to further evaluate the situation. However, Ziobron did not return to Dr. Squires for evaluation or treatment. After Ziobron underwent a later surgery performed by other physicians, it was discovered that the material that these physicians believed to be ovarian remnants was not.

Ziobron filed a proposed medical malpractice complaint against the defendants with the Indiana Department of Insurance. On April 18, 2007, the medical review panel rendered its opinion, which provides in part:

> The panel is of the unanimous opinion that the evidence does not support the conclusion that the Defendants, Madalyn Kell Squires, M.D., Women's Health Partnership, P.C., Michael G. Hostetter, M.D., and Associated Urologists, Inc.,

failed to meet the applicable standard of care as charged in the complaint.

Appellant's App. p. 84.

Ziobron then commenced this action in the Hamilton Superior Court. In her ten-count amended complaint,[1] which named Drs. Squires and Hostetter, Women's Health Partnership, Associated Urologists, and St. Vincent Hospital as defendants, she contended that Drs. Squires and Hostetter negligently operated upon her and committed several acts of fraud. Specifically, all of her claims rest upon allegations that Dr. Squires negligently failed to remove her left ovary,[2] that Dr. Hostetter negligently performed the bladder sling procedure, and that all of the defendant parties had a duty to supervise each other and inform her of negligence.[3] *Id.* at 50–66.

The defendants, excluding St. Vincent Hospital, filed motions for summary judgment based upon the medical review panel's unanimous decision. During a pretrial conference, the trial court asked Ziobron's counsel whether she had secured an expert opinion that the defendants breached the applicable standard of care. The trial court then instructed counsel:

> Bottom line, this is a medical malpractice case and you have to have an expert opinion that says the standard of care was breached and you have to be prepared to respond to that.... [The summary judgment motions] can be defeated by a simple one page piece of paper

from somebody that you're relying on that says they did something wrong. You don't need depositions of everybody, you need one fact. One, under oath, from an expert, and it's done. Of course it is, it is the exception, not the rule.

Tr. p. 11, 13. Ultimately, Ziobron designated several materials in opposition to the defendants' summary judgment motions: a deposition of Dr. Squires and attached exhibits, a deposition of Dr. Hostetter and attached exhibits, depositions of two medical review panel members and attached exhibits, an affidavit written and signed by Ziobron, and the materials designated in support of Dr. Squires's summary judgment motion. Appellant's App. p. 181–82. The depositions and several of the attached documents reflected that there was a question between 2002 and 2006 about whether Ziobron retained her left ovary after the 2001 surgery performed by Dr. Squires. However, a certified medical record from October 2006 reveals that Ziobron underwent surgery to remove what was thought to be her left ovary but was not. *Id.* at 143, 153. The pathology report from that surgery reports, "No ovarian parenchyma recognized." *Id.* at 153.

The trial court granted the defendants' motions for summary judgment, finding that Ziobron failed to meet her burden of rebutting, with an expert opinion, the medical review panel's finding that the health care providers met the applicable standard of care. *Id.* at 12–13. The trial court

---

1. Ziobron's original complaint listed the defendants anonymously. She later amended the complaint to name the defendants.

2. She also argued that Dr. Squires negligently performed an anterior and posterior repair. However, she makes no mention of this on appeal.

3. Ziobron also alleged several counts of fraud against Drs. Squires and Hostetter. We observe that the fraud claims are part and par-

cel of her medical malpractice claims because they relate to the doctors' alleged failures to provide appropriate healthcare. *See Kuester v. Inman,* 758 N.E.2d 96, 102 (Ind.Ct.App. 2001). Because we ultimately agree with the trial court that there are no issues of material fact and that summary judgment in favor of the defendants is appropriate because Drs. Squires and Hostetter were not negligent, Ziobron's fraud claims also fail.

further found that Ziobron's claims do not succeed under the doctrine of *res ipsa loquitur* because "this is not the type of case that could be resolved solely by laypersons." *Id.* at 15. Ziobron now appeals.

## Discussion and Decision

Ziobron contends that the trial court erred in granting summary judgment in favor of Dr. Squires, Dr. Hostetter, Women's Health Partnership, and Associated Urologists.[4] She contends that there is a genuine issue of material fact relating to whether these defendants breached their duty of care while treating her. "The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law." *Bushong v. Williamson*, 790 N.E.2d 467, 474 (Ind. 2003). When reviewing a trial court's grant of summary judgment, we apply the same standard used by the trial court. *Carlson v. Warren*, 878 N.E.2d 844, 850 (Ind.Ct.App.2007) (citing *Auto–Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1282 (Ind.2006)). Summary judgment "shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). On appellate review, "all facts and inferences drawn from them are construed in favor of the non-moving party." *Carlson*, 878 N.E.2d at 850–51 (citing *Auto–Owners Ins. Co.*, 842 N.E.2d at 1282). On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity. *Roberts v. Sankey*, 813 N.E.2d

1195, 1197 (Ind.Ct.App.2004), *trans. denied.* A party appealing from an order granting summary judgment has the burden of persuading the appellate tribunal that the decision was erroneous. *Id.* The parties moving for summary judgment bear the burden of showing the absence of a factual issue and that they are entitled to judgment as a matter of law. *McGee v. Bonaventura*, 605 N.E.2d 792, 794 (Ind.Ct. App.1993). Once that burden has been met, the opposing party cannot rest upon its pleadings. *Id.* It must then present sufficient rebuttal evidence to demonstrate the existence of a genuine issue of material fact. *Id.* (citing T.R. 56(E)).

■■ Under Indiana law, a plaintiff in a medical malpractice case must generally present expert opinion testimony to demonstrate the existence of a genuine issue of fact once the defending parties designate the opinion of a medical review panel finding that the defendants exercised the applicable standard of care. *Boston v. GYN, Ltd.*, 785 N.E.2d 1187, 1190 (Ind.Ct.App. 2003), *reh'g denied, trans. denied; see also Ho v. Frye*, 880 N.E.2d 1192, 1201 (Ind. 2008) ("[A] medical malpractice plaintiff is ordinarily required to present expert opinion that a defendant health care provider's conduct fell below the applicable standard of care."). Because of the complexity of medical diagnosis and treatment, " 'substantive law requires expert opinion as to the existence and scope of the standard of care which is imposed upon medical specialists and as to whether particular acts or omissions measure up to the standard of care.... Before the trier of fact may

---

4. Ziobron presents no distinct arguments on appeal regarding Women's Health Partnership and Associated Urologists. As such, she has waived any challenge to summary judgment in favor of these defendants. Further, Ziobron makes no argument on appeal about Dr. Squires's alleged negligence relating to

Dr. Hostetter's conduct, and she has therefore waived this claim. Waiver notwithstanding, because we conclude that the trial court properly entered summary judgment in favor of Drs. Squires and Hostetter, the above arguments would fail on their merits.

confront the factual question [of negligence] the issue must be presented and placed in controversy by reference to expert opinion.' " *McGee*, 605 N.E.2d at 794 (quoting *Bassett v. Glock*, 174 Ind.App. 439, 368 N.E.2d 18, 23 (1977)).

■ In some situations, however, a physician's alleged negligence is so obvious that expert testimony is unnecessary. *Syfu v. Quinn*, 826 N.E.2d 699, 703 (Ind. Ct.App.2005) (citing *Wright v. Carter*, 622 N.E.2d 170, 171 (Ind.1993)). In such cases, the doctrine of *res ipsa loquitur* applies to defeat the defendant's summary judgment motion. *See id.* at 703. "Application of this exception is limited to situations in which the physician's conduct is so obviously substandard that one need not possess medical expertise in order to recognize the breach of the applicable standard of care." *Id.* (citing *Malooley v. McIntyre*, 597 N.E.2d 314, 319 (Ind.Ct. App.1992)).

### I. Expert Opinion

■ Ziobron contends that there is a genuine issue of material fact regarding whether the defendants exercised the applicable standard of care when performing medical services upon her. Medical malpractice cases are no different from other kinds of negligence actions regarding what must be proven. *Roberts*, 813 N.E.2d at 1197 (citing *Bader v. Johnson*, 732 N.E.2d 1212, 1216–17 (Ind.2000)). The plaintiff must show: (1) a duty owed to the plaintiff by the defendant; (2) a breach of duty by allowing conduct to fall below the applicable standard of care; and (3) a compensable injury proximately caused by the defendant's breach of duty. *Id.* (citing *Bader*, 732 N.E.2d at 1217).

In support of their motions for summary judgment, Drs. Squires and Hostetter, Women's Health Partnership, and Associated Urologists designated the certified unanimous opinion of the medical review panel that they exercised the applicable standard of care. *See* Ind.Code § 34–18–10–23 (opinion of the medical review panel admissible evidence). It is well settled that "a unanimous opinion of the [medical review] panel that the defendant did not breach the applicable standard of care is sufficient to negate the existence of a genuine issue of material fact." *McGee*, 605 N.E.2d at 794. Thus, the burden shifted to Ziobron to present sufficient evidence of the existence of a genuine issue of fact.

The trial court granted the defendants' summary judgment motions, finding that Ziobron failed to present expert opinion to rebut the determination of the medical review panel. On appeal, Ziobron first argues that she presented sufficient expert opinion evidence to create a genuine issue of fact by designating portions of depositions with the members of the medical review panel and medical records reflecting the controversy over whether she retained her left ovary. These materials, she contends, reflect that Dr. Squires did not exercise the applicable standard of care.

Regarding Dr. Squires, Ziobron points to deposition testimony from two medical review panel members to show a breach of the applicable standard of care. Panelist Dr. Thomas A. Ferrara testified, "Dr. Squires said in her operative note that she removed the left ovary. If she did not remove the ovary, that would be not within the standard of care." Appellant's App. p. 239. Further, in response to the question, "So if [Dr. Squires] did fail to remove the left ovary, would that be below the standard of care in your opinion?," panelist Dr. Russell L. Judd answered, "Yeah." *Id.* at 243. However, Ziobron ignores that these two panelists did not retreat from their previous conclusion that *Dr. Squires did not breach the applicable standard of care.*

Specifically, the following exchange took place with Dr. Ferrara:

> Q. Even with the—your opinion again with regard to Dr. Squires and Women's Health Partnership has not changed since the rendering of the panel opinion, correct?
>
> A. My opinion is that Dr. Squires took out the uterus, the left tube and ovary, and the right tube and ovary. What happened to the left ovary I don't know. That is my opinion. That's what it was at our panel. That's what it was when I reviewed it. That's what it was when I reviewed for this deposition, and I think I've said that once or twice today.

*Id.* at 268. And, although the parties do not provide us with panelist Dr. Judd's full deposition and we therefore cannot know whether he was asked directly whether he stood by the medical review panel's determination, Dr. Judd testified during his deposition that the mass in Ziobron's pelvis that was a suspected retained left ovary was actually a fallopian cyst. *Id.* at 242–B. Dr. Judd expressly rejected the proposition that it was a retained ovary: "I think [the radiologist] saw a cyst in the pelvis, and he wasn't sure what it was." *Id.* Ziobron's designation of testimony from the medical review panel experts does not satisfy her burden of producing expert opinion that Dr. Squires breached her standard of care.

Also regarding Dr. Squires, Ziobron attempts to bolster the testimony from Drs. Ferrara and Judd with medical records pertaining to the mass inside of Ziobron's pelvis that was a suspected retained left ovary. However, these medical records are uncertified, and, as the trial court found, uncertified reports cannot be considered by the court. *Id.* at 14. Records kept in the regular conduct of business are generally admissible as evidence, Ind. Evidence Rule 803(6), but such records are not self-authenticating and must be certified in the manner outlined by Indiana Evidence Rule 902(9) in order to be submitted with affidavits supporting or opposing summary judgment under Indiana Trial Rule 56(E). The radiology reports to which Ziobron points as additional expert evidence are not certified in compliance with the rule and are instead merely found in the appellate record with the other materials she designates in opposition to summary judgment. Appellant's App. p. 235–37, 241, 245–48. Therefore, we cannot consider them.[5] Even if we were to consider these radiology reports, they do not create a material factual dispute. The reports indicate that, beginning in 2002, several doctors ordered CT scans or ultrasounds of Ziobron's pelvis and spotted a mass that they identified as an ovarian cyst or an ovary. *Id.* at 235, 237, 241, 246, 247–48. However, when doctors operated upon Ziobron in 2006 and removed the mass, no ovary was found. Furthermore, there was expert deposition testimony that radiologists, through x-rays or ultrasound examinations, can only identify masses but not what the masses definitively are. *Id.* at 240–A ("[T]he radiologist has to go on

---

**5.** The case to which Ziobron directs us in support of her contention that these records are properly before us does not advance her position. *See Bunch v. Tiwari,* 711 N.E.2d 844, 849 (Ind.Ct.App.1999). *Bunch* does not say that papers attached to affidavits used in a summary judgment proceeding need not be certified. *Bunch* holds that medical records which are designated for the purpose of being considered in a summary judgment proceeding and upon which an expert affidavit relies do not need to be attached to the affidavit, as long as they are served contemporaneously with the affidavit. Such records must still comport with Indiana Trial Rule 56(E), which permits the consideration of *"[s]worn or certified copies* not previously self-authenticated of all papers" to which an affidavit refers. (Emphasis added).

what it likely is, what it possibly is.... [B]ut he can't say it's an ovar[y] until somebody's had a piece of it."), 261 ("It is not possible for a radiologist to diagnos[e] an ovary. All the radiologist can say is mass or cyst."), 262 ("[T]he radiologist cannot say this is [a] left ovary. A radiologist can say it is a solid mass measuring da da da da da which could be [a] left ovary, but he can't make the diagnosis."), 264 ("I don't know how many times I have to say this—I object to the fact that the radiologist is reading an anatomical diagnosis...."). Thus, even if considered, these reports do not constitute expert opinion evidence that creates a material issue of fact and rebuts the expert opinion of the medical review panel.

Regarding Dr. Hostetter, Ziobron points to the following portion of Dr. Judd's deposition testimony:

Q. Would it be below the standard of care to properly suture the Pelvicol sling into place?

A. Sure.

Q. Okay.

A. You want to do the surgery properly.

*Id.* at 244. Again, however, Ziobron ignores that the expert panelist did not opine that Dr. Hostetter failed to meet his standard of care. Rather, Dr. Judd stood by the medical review panel's decision that Dr. Hostetter did not breach his applicable standard of care:

Q. The panel opinion that you were shown as Exhibit 2 to this deposition, do you still stand by your opinion that the care rendered by Dr. Hostetter to Ms. Ziobron was in accord with the applicable standard of care for a board certified urologist?

A. I think so.

\* \* \* \* \* .\*

Q. So in addressing any of the questions raised by counsel for the plaintiffs in this case, have your opinions changed at all—

A. No.

Q.—as to Dr. Hostetter?

A. No.

*Id.* at 278–279 (Dr. Judd's deposition). Thus, Ziobron's attempt to create a question of fact regarding the level of care exercised by Dr. Hostetter by pointing to portions of Dr. Judd's deposition testimony fails. By designating a portion of this deposition, she has not presented expert opinion to rebut the medical review panel's determination that Dr. Hostetter met his applicable standard of care.

## II. Res Ipsa Loquitur

 Ziobron also relies upon the doctrine of *res ipsa loquitur* for her argument that she presented sufficient evidence to create genuine issues of fact relating to Drs. Squires's and Hostetter's alleged negligence. We have previously explained the doctrine of *res ipsa loquitur*, or "the thing speaks for itself," as follows:

> Under the doctrine of *res ipsa loquitur*, negligence may be inferred where 1) the injuring instrumentality is shown to be under the management or exclusive control of the defendant or his servants, and 2) the accident is such as in the ordinary course of things does not happen if those who have management of the injuring instrumentality use proper care.

*Syfu*, 826 N.E.2d at 704. A plaintiff relying upon this doctrine may rely upon either common knowledge or expert opinion evidence to establish a breach of duty, the second prong of the test. *Id.* Expert opinion evidence is not, however, necessary because "the undisputed facts themselves create an inference of negligence such that the judge cannot say that the defendant must win as a matter of law, the contrary

opinion of the medical review panel notwithstanding." *Wright,* 622 N.E.2d at 171.

In this case, Ziobron did not present an expert opinion that the defendants failed to exercise the applicable standard of care. She contends, however, that the doctrine of *res ipsa loquitur* applies because it is "obvious" that Dr. Squires would have noticed that she failed to remove Ziobron's left ovary if she would have exercised the appropriate level of care during Ziobron's surgery. Appellant's Br. p. 25. This argument presumes that Ziobron retains her left ovary. However, the evidence reflects that Ziobron *did not* retain her left ovary after Dr. Squires operated upon her. Again, Ziobron cites to the uncertified radiology reports that we have already determined cannot be considered by the Court. However, even if we do consider the contents of these reports, there simply is no genuine issue of fact regarding whether Ziobron retains her left ovary. We are not, as Ziobron alleges, improperly weighing the evidence by finding that this is not a genuine issue. The radiology reports upon which Ziobron relies reflect that various doctors opined between 2002 and 2006 that she had a left ovary. However, after doctors surgically removed the mass that was thought to be an ovary in 2006 and examined it, a pathologist determined that the mass contained "[n]o ovarian parenchyma." Appellant's App. p. 153. Thus, the record reflects that Dr. Squires did not leave Ziobron's left ovary inside of her.[6]

Ziobron also contends that she presented sufficient evidence to create a genuine issue of fact regarding the level of care exercised by Dr. Hostetter during her bladder sling operation. Ziobron points to her affidavit attesting to the incident in late 2001 during which she felt the stitches holding her internal bladder sling come loose and her bladder drop, Dr. Hostetter's deposition testimony that he learned the procedure used during Ziobron's surgery from medical articles and that her procedure may have been his first using a particular material, Dr. Hostetter's deposition testimony that the material used during Ziobron's surgery could fail if improperly placed or sutured, deposition testimony from a member of the medical review panel that a failure to properly suture a bladder sling would be below the applicable standard of care, and a verified medical record reflecting that a urologist who treated Ziobron in 2006 documented urethral hypermobility and a cystocele, conditions that Dr. Hostetter sought to treat with the 2001 surgery. Reply Br. of Appellant p. 6–7. The facts of this case do not, however, reflect the sort of conduct that falls within the doctrine of *res ipsa loquitur* and allows an inference of negligence without expert opinion testimony. *See Wright,* 622 N.E.2d at 171 (examining wire left in body after biopsy and commenting, "[j]uries do not need an expert to help them conclude, say, that it is malpractice to operate by mistake on the wrong limb"); *Ball Mem'l Hosp. v. Freeman,* 245 Ind. 71, 196 N.E.2d 274 (1964) (injection of poison into surgical patient); *Funk v. Bonham,* 204 Ind. 170, 183 N.E. 312 (1932) (sponge left in abdomen); *Cleary v. Manning,* 884 N.E.2d 335 (Ind. Ct.App.2008) (spark from surgical instrument ignited oxygen in patient's face mask); *Gold v. Ishak,* 720 N.E.2d 1175 (Ind.Ct.App.1999) (same), *trans. denied; Stumph v. Foster,* 524 N.E.2d 812 (Ind.Ct.

---

6. Because Dr. Squires did not leave Ziobron's left ovary inside of her body, the case cited by Ziobron, *Robertson v. Bond,* 779 N.E.2d 1245 (Ind.Ct.App.2002), *trans. denied,* in support of her *res ipsa loquitur* claim is inapposite. In *Robertson,* the defendant doctors failed to remove an ovarian cyst.

App.1988) (chiropractor broke patient's rib during treatment for migraine headaches), *reh'g denied; Klinger v. Caylor*, 148 Ind. App. 508, 267 N.E.2d 848 (1971) (surgical padding left in intestinal tract), *reh'g denied; Ciesiolka v. Selby*, 147 Ind.App. 396, 261 N.E.2d 95 (1970) (teflon mesh left in abdomen). Dr. Hostetter's method of preparing for Ziobron's surgery, the lifespan of a bladder sling, and the likelihood that a urological patient will re-exhibit urethral hypermobility symptoms or develop a cystocele five years after a bladder sling surgery are not within the realm of a layperson's knowledge and, thus, require expert testimony.

### III. Attorneys' Fees

■■■■ Indiana Appellate Rule 66(E) provides for an award of damages and attorneys' fees if an appeal, petition, or motion or response is found by a court on appeal to be frivolous or in bad faith. The damages and fees are awarded in the court's discretion. *Pramco III, Inc. v. Yoder*, 874 N.E.2d 1006, 1014–15 (Ind.Ct.App. 2007). However, we use extreme restraint in awarding appellate attorneys' fees "because of the potential chilling effect upon the exercise of the right to appeal." *Pardue v. Smith*, 875 N.E.2d 285, 292 (Ind.Ct. App.2007).

■■■ Dr. Hostetter and Associated Urologists contend that Ziobron brings this appeal in bad faith because her attorney has lost two prior appeals brought before this Court where a plaintiff failed to rebut a medical review panel decision with an expert opinion. *See Hamilton v. Ashton*, 846 N.E.2d 309 (Ind.Ct.App.2006), *clarified on reh'g*, 850 N.E.2d 466, *trans. denied; Boston*, 785 N.E.2d at 1188. However, the success of the arguments made in *Hamilton, Boston*, and the instant appeal depends at least in part upon the application of facts unique to the cases.

"[T]he sanction of appellate damages for lack of merit should be applied only when the party's contentions and arguments are utterly devoid of all plausibility." *Montgomery v. Trisler*, 814 N.E.2d 682, 685 (Ind.Ct.App.2004) (citation omitted). We cannot say that Ziobron's arguments are so frivolous or in bad faith to warrant the imposition of attorneys' fees. Likewise, we deny Ziobron's request for attorneys' fees from Dr. Hostetter and Associated Urologists.

The judgment of the trial court is affirmed.

KIRSCH, J., and CRONE, J., concur.

### ORDER

Appellee, Michael G. Hostetter, M.D. And Associated Urologists Inc. by counsel, have filed appellees' Michael G. Hostetter, M.D. And Associated Urologists, Inc. Motion to Publish Memorandum Decision.

Having reviewed the matter the Court FINDS AND ORDERS AS FOLLOWS:

1. Appellees' Motion to Publish Memorandum Decision is GRANTED, and this Court's opinion handed down in this cause on October 7, 2008, marked memorandum Decision, Not for Publication, is now ORDERED PUBLISHED.

KIRSCH, VAIDIK, CRONE, JJ., concur.