# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**HEIDI K. KOENEMAN**
**EDWARD L. MURPHY, JR.**
Murphy Ice & Koeneman LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEES:
JANE DOE et al.

**RICHARD W. MORGAN**
**JEROME W. MCKEEVER**
Pfeifer Morgan & Stesiak
South Bend, Indiana

ATTORNEY FOR APPELEE:
INDIANA DEPARTMENT OF INSURANCE

**MATTHEW W. CONNER**
Bose McKinney & Evans, LLP
Indianapolis, Indiana

**FILED**

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANONYMOUS HOSPITAL, INC., | ) | |
|     Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  20A03-1210-CT-426 |
| | ) | |
| JANE DOE, et al., | ) | |
|     Appellees-Plaintiffs, | ) | |
| | ) | |
| INDIANA DEPARTMENT OF INSURANCE, | ) | |
|     Appellee-Defendant. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Evan S. Roberts, Judge
Cause No. 20D01-0910-CT-64

July 30, 2013

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Jane Doe ("Doe") filed a complaint for damages against Anonymous Hospital, Inc. ("Anonymous Hospital") and sought a preliminary determination that her claim is one of common law negligence, and thus the provisions of the Indiana Medical Malpractice Act ("MMA")[1] are inapplicable. Doe was granted partial summary judgment and we accepted jurisdiction of a discretionary interlocutory appeal challenging that order. We reverse and remand for further proceedings.

**Issue**

Anonymous Hospital presents the sole issue of whether the trial court erred in making its preliminary determination that Doe's complaint states a claim that is outside the purview of the MMA.

**Facts and Procedural History**

On December 31, 2007, Doe was en route to a gathering of friends when she heard voices and became convinced that a "rapture" of Christians was occurring.[2] (App. 15.) She then jumped from her boyfriend's moving vehicle. Doe's friends contacted her parents, who took her to their South Bend home. Doe jumped out a window and ran down the road in blizzard-like conditions, eventually seeking refuge in a stranger's home. There, she falsely accused her father of being a child molester.

Doe's parents took her to the psychiatric ward of Anonymous Hospital. She was

---

[1] Ind. Code § 34-18-1-1.

[2] In her deposition, Doe explained that she believed people were disappearing from earth because Christ had returned for his followers. She became angry and confused at the prospect of being left behind.

evaluated by a staff psychiatrist, who diagnosed her as "psychotic not otherwise specified." (App. 15.) It was noted that Doe was suffering from delusions, suicidal ideation, religious delusions, and auditory hallucinations. She was admitted for in-patient psychiatric care.

At some point, Doe encountered Marcus, a middle-aged patient who had been admitted for alcohol detoxification. Marcus was wrapped in a bed sheet, and Doe formed the belief that he was Jesus Christ.[3] She expressed a desire to wash Marcus's feet. Later, Doe threw ice on her psychiatrist because she believed that he was trying to harm Marcus. Doe was placed in five-point restraints and provided with one-on-one monitoring. She was also prescribed several medications.

On January 7, 2008, Doe was placed on less intensive monitoring. Staff members were to make a notation of her whereabouts each fifteen minutes. On the morning of January 9, 2008, Doe's psychiatrist met with Doe's parents in a conference room five doors down from Doe's room. Doe walked down the hallway and into the conference room but was told to go back to her room.

On the way back to her room, Doe passed by Marcus. He motioned to Doe to come into his room; when she approached, he pulled her into the room and they began kissing. Marcus unbuttoned his pants, pulled out his penis, and pushed Doe's head toward it. After they engaged in oral sex, Marcus told Doe to leave and come back later. Doe returned as requested. Marcus then took Doe into the bathroom and attempted anal sex but could not achieve penetration. He moved Doe to the bed, where they engaged in vaginal intercourse.

---

[3] Doe also expressed beliefs at various times that one of her parents was Satan, one parent was divine, and her psychiatrist was God.

Following this incident, Doe's parents ended the meeting and came to Doe's room to visit with her. Doe was on her bed, curled into a ball and trembling. She recoiled from her mother's kiss and told her parents this would be the last time they would see her. Later, she told fellow patients that she wanted to die. Doe found a hospital social worker in the hallway and reported that she had been "lured" into a patient's room, "fooled around" with him, and "went all the way." (App. 137.)

Doe's psychiatrist initially informed Doe's parents of his belief that Doe had experienced another delusion. However, Doe underwent a physical examination and a vaginal swab tested positive for semen. As a result, Marcus was immediately discharged from Anonymous Hospital and Doe was discharged under the full-time supervision of a nurse.

On October 14, 2009, Doe filed her "Complaint for Damages and Declaratory Judgment." (App. 22.) In the second count, she sought a declaration that "the case is not subject to the Indiana Medical Malpractice Act but, rather, is a common law tort claim for negligence on the part of the Defendant, Anonymous Hospital, Inc." (App. 23.) She filed a Proposed Complaint with the Indiana Department of Insurance on December 29, 2009.

On November 15, 2012, Anonymous Hospital filed a Motion for Preliminary Determination, Motion for Declaratory Judgment, and a supporting memorandum. Doe moved for partial summary judgment and also filed a Motion for Declaratory Judgment. The Indiana Department of Insurance joined in Doe's motion for partial summary judgment. The trial court heard arguments on March 15, 2012. On May 16, 2012, the trial court entered

4

partial summary judgment in favor of Doe, concluding that her claim "sounds in ordinary negligence." (App. 20.)

Anonymous Hospital petitioned the trial court to certify the summary judgment order for an interlocutory appeal. On September 4, 2012, following a hearing at which the petition was not contested, the trial court entered an order certifying its interlocutory order for appeal. On November 14, 2012, this Court accepted jurisdiction.

**Discussion and Decision**

## I. Standard of Review

"The entry of summary judgment on a motion for a preliminary determination is subject to the same standard of appellate review as any other entry of summary judgment." Boggs v. Tri-State Radiology, Inc., 730 N.E.2d 692, 695 (Ind. 2000). Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C).

The propriety of the trial court's grant of partial summary judgment ultimately turns on whether Doe stated a claim in negligence or medical malpractice. Whether a case is one of medical malpractice as defined by the MMA is a question for the court. Weldon v. Universal Reagents, Inc., 714 N.E.2d 1104, 1107 (Ind. Ct. App. 1999). Accordingly, our review is de novo.

## II. Analysis

The MMA provides that malpractice is "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a

5

health care provider, to a patient." Ind. Code § 34-18-2-18. Health care is "an act or treatment performed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Ind. Code § 34-18-2-13. A "patient" is "an individual who receives or should have received health care from a health care provider, under a contract, express or implied, and includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider." Ind. Code § 34-18-2-22.

The MMA is not all-inclusive as to claims against medical providers, and a claim against a medical provider sounding in general negligence or premises liability rather than medical malpractice falls outside the procedural and substantive provisions of the MMA. Peters v. Cummins Mental Health, Inc., 790 N.E.2d 572, 576 (Ind. Ct. App. 2003), trans. denied. We look to the substance of a claim to determine the applicability of the MMA. Doe by Roe v. Madison Ctr. Hosp., 652 N.E.2d 101, 104 (Ind. Ct. App. 1995), trans. dismissed.

Neither the occurrence of an injury at a place that can generally be described as a healthcare facility nor the plaintiff's status as a patient are dispositive in determining whether the claim sounds in medical malpractice. Estate of O'Neal ex rel. Newkirk v. Bethlehem Woods Nursing & Rehab. Ctr., 878 N.E.2d 303, 311 (Ind. Ct. App. 2007). A contrary rule would result in an unreasonably broad inclusion of claims that were not intended to fall within the scope of the MMA. Id. Accordingly, the test to determine whether a claim sounds in medical malpractice is "whether the claim is based on the provider's behavior or practices

6

while 'acting in his professional capacity as a provider of medical services.'" <u>Madison Ctr., Inc. v. R.R.K.</u>, 853 N.E.2d 1286, 1288 (Ind. Ct. App. 2006), <u>trans. denied</u>, quoting <u>Collins v. Thakkar</u>, 552 N.E.2d 507, 511 (Ind. Ct. App. 1990), <u>trans. denied</u>). "Applying this test has resulted in hairline distinctions between claims that sound in medical negligence and those that sound in ordinary negligence." <u>Estate of O'Neal</u>, 878 N.E.2d at 311.

A case sounds in ordinary negligence where the factual issues are capable of resolution by a jury without application of the standard of care prevalent in the local medical community. See <u>Murphy v. Mortell</u>, 684 N.E.2d 1185, 1188 (Ind. Ct. App. 1997) (claim of sexual battery during hospitalization outside the MMA), <u>trans. denied</u>; <u>Doe by Roe</u>, 652 N.E.2d at 103 (claim of sexual assault causing patient to contract chlamydia outside the MMA); <u>Winona Mem'l Found. of Indianapolis v. Lomax</u>, 465 N.E.2d 731, 732 (Ind. Ct. App. 1984) (complaint for negligence arising from fall of patient on loose floorboard as she prepared to receive physical therapy stated a claim for premises liability not within the scope of the MMA); <u>Harts v. Caylor-Nickel Hosp., Inc.</u>, 553 N.E.2d 874, 879 (Ind. Ct. App. 1990), (the tenor of a complaint for injury upon fall from hospital bed after the bedrail collapsed sounded in ordinary negligence), <u>trans. denied</u>.

Similarly, in <u>Pluard v. Patients Comp. Fund</u>, 705 N.E.2d 1035, (Ind. Ct. App. 1999), <u>trans. denied</u>, a negligence claim was presented by allegations arising after a surgical lamp became detached from the wall and fell on a newborn's head. Although a nurse had positioned the light at the direction of a doctor, it was not the positioning of the light – but its detachment – that caused the injury. <u>Id.</u> at 1038. A juror's common knowledge and

experience would enable them to understand these circumstances; accordingly, the case did not sound in medical malpractice. Id.

By contrast, the MMA applies where there is a causal connection between the conduct complained of and the nature of the patient-health care provider relationship. See Putnam Cnty. Hosp. v. Sells, 619 N.E.2d 968, 971 (Ind. Ct. App. 1993) (a complaint for injury to a plaintiff who fell following surgery and was still under the effects of anesthesia fell "squarely within the scope of the [MMA]").

Moreover, a physician-patient relationship is necessary to bring claims under the procedures of the MMA. See Weldon, 714 N.E.2d at 1110 (a participant in a red blood cell donor program was not a patient for purposes of the MMA when the procedure performed on her body, the injection of antigens to produce antibodies for manufacture of RhoGam for pregnant women, was not performed for the participant's benefit).

In R.R.K., a seventeen-year-old psychiatric hospital in-patient and another resident began arguing; while the staff restrained R.R.K., the other resident (who was unrestrained) kicked R.R.K. in the face causing significant injury. R.R.K., 853 N.E.2d at 1287. After R.R.K. and his parents brought suit under premises liability, the hospital contended that the claim was one of medical malpractice. A panel of this Court concluded that R.R.K.'s claim was not subject to the MMA, observing:

> Here, R.R.K.'s injuries were not caused by any services which the Center as the health care provider provided or failed to provide to him as a patient. Rather, they were caused by another resident whom the Center failed to medicate, restrain, or confine. As such, they arise not from the Center's medical treatment of R.R.K., but from his presence on the Center's premises.

8

Indeed, a visitor upon the premises could have as easily sustained R.R.K.'s injuries.

853 N.E.2d at 1288. In reaching its decision, the R.R.K. Court relied upon Webb v. Jarvis, 575 N.E.2d 992, 996 (Ind. 1991). In Webb, the plaintiff, who was a shooting victim, sued the physician who prescribed anabolic steroids for the third-party contending that, by doing so, the physician committed malpractice. 575 N.E.2d at 992. Our Supreme Court concluded that the plaintiff's action against the physician sounded in negligence. Id. at 995.[4]

In sum, the appropriate analysis involves first, the nature of the conduct alleged in the complaint – whether or not the alleged negligence involves provision of medical services – and, second, whether the rendering of medical services is to the plaintiff for the plaintiff's benefit. Ultimately, if the alleged harm would have occurred independent of medical services provided to the plaintiff, it sounds in common law negligence. This is so even if the actor who caused the harm is himself receiving medical care. See id.; see also Midtown Cmty. Mental Health Ctr. v. Estate of Gahl, 540 N.E.2d 1259, 1262 (Ind. Ct. App. 1989) (observing that, assuming a duty existed, a breach of the duty to properly medicate and supervise Jackson – who killed a probation officer – could constitute malpractice as to Jackson but not as to third parties with whom he might come in contact), trans. denied.

---

[4] The R.R.K. Court acknowledged that a separate panel of this Court had previously determined, in Ogle v. St. John's Hickey Mem'l Hosp., 473 N.E.2d 1055 (Ind. Ct. App. 1985), that the rape of a psychiatric patient by another patient did not present a claim of ordinary negligence. In so doing, the Ogle Court found "confinement" to be an act of medical care, noting that the definition of healthcare in the MMA specifically included "the patient's medical care, treatment or confinement." Id. at 1059. The R.R.K. Court observed that Ogle predated our Supreme Court's opinion in Webb and declined to follow it. Id. at 1289. Anonymous Hospital urges that we follow the holding of Ogle to conclude that an act occurring during confinement arises from medical care while Doe urges that we find this case to be like R.R.K., as did the trial court.

9

We now turn to the specific allegations of Doe's Complaint for Damages and Declaratory Judgment to determine whether she states a common law negligence claim or alleges that the defendant committed medical malpractice as to her. In particular, the Complaint states that Doe was a patient of Anonymous Hospital and further alleges:

> Due to Plaintiff's medical condition and the psychotropic drugs that were administered to her, she was not fully aware of her surroundings, nor was she competent to make informed decisions on her behalf.

> Due to the negligence of employees and agents of Anonymous Hospital, Plaintiff was sexually assaulted by another patient on two separate occasions on January 9, 2008.

(App. 23.) In her deposition, Doe explained the circumstances of her encounters with Marcus as follows. Marcus "was motioning for [Doe] to come into his room and pulled [her] in and then he started kissing [Doe]." (App. 76.) He "kind of grabbed" her arm and she did not resist. (App. 76.) Marcus pulled out his penis and pushed Doe's head down, but she did not "remember him like keeping [her] down there." (App. 77.)[5] Marcus told Doe to leave and come back; she did so. After Doe returned to Marcus's room, he took her into the bathroom and attempted anal sex. Marcus then "led [Doe] back to the bed" where he removed Doe's jeans and underwear and they engaged in intercourse. (App. 79.) Doe agreed that she "did not resist in any way." (App. 81.)

Doe returned to Marcus's room of her own volition, in the physical sense. Her participation in sexual acts with Marcus was not accomplished by force or threat of force, and he was not charged with criminal conduct. Rather, the gravamen of Doe's complaint is

---

[5] At the time of her deposition, Doe could not specifically recall whether she had told the investigating police officer that she had "consented to give [Marcus] oral sex." (App. 77.)

10

that she was rendered incompetent to make an informed decision regarding sexual conduct because of psychotropic drugs prescribed for her by the employee of Anonymous Hospital. In other words, she was allegedly placed in a position of undue vulnerability because of decisions made by her treating physician, that is, which medications and what dosage were appropriate for her care while she was confined in close proximity to other patients.

Doe directs our attention to the language of R.R.K.: "[t]he duty the Center owed to R.R.K. to prevent his being subject to attack by one of the other patients was the same as the duty owed to any invitee upon the premises."[6]  R.R.K., 853 N.E.2d at 1289.  She characterizes the encounter with Marcus as an "attack" and argues that "the Hospital failed to physically restrain Marcus and failed to monitor his whereabouts and activities." (Appellee's Brief at 9.)

Doe did not allege in her Complaint that she was injured as a result of the hospital's failure to restrain Marcus.  Nonetheless, she claims that she "broadly alleges negligence" in the Complaint and that "Paragraph 5 (relating to her condition and psychotropic drugs) goes to a separate issue, one to be decided by the trier of fact, whether Jane Doe had capacity to consent to sex." (Appellee's Br. at 15.)  Ultimately, however, a jury cannot decide whether Doe was indeed "attacked" absent a determination that she was or was not able to give consent given her pharmacological regimen.  Her expert witness opined that she was unable to give consent while her treating psychiatrist opined that she was able to do so.

---

[6] At the same time, the R.R.K. Court recognized that "[t]he Center's failure to properly medicate, restrain, or confine the resident who struck and injured R.R.K. may have constituted malpractice as to that resident[.]" R.R.K., 853 N.E.2d at 1289.

11

As Doe observes, the question of sufficient mental capacity to consent to sexual activity is a question of fact to be decided by the fact-finder. Hall v. State, 504 N.E.2d 298, 300 (Ind. Ct. App. 1987). However, in the face of an allegation that a mental deficiency was pharmacologically induced, the trier of fact would need expert assistance in reaching its determination. Doe appeared to her parents to be significantly under the influence of drugs but was aware of her surroundings and able to convey her wishes, such as asking to go home. A layman's typical life experience cannot be expected to provide a basis for assessment of the propriety of a particular pharmacological regimen. In these circumstances, the fact-finder cannot be expected to determine whether there has been a breach of a particular standard of care absent expert medical testimony.

Unlike the plaintiff in R.R.K., whose "injuries were not caused by any services which the Center as the health care provider provided or failed to provide to him as a patient," 853 N.E.2d at 1288 (emphasis added), Doe alleges that she was subject to attack because her prescribed medications rendered her vulnerable. She has called into question the degree of skill exercised by her health care provider. With reference to the allegations of Doe's Complaint, the fact-finder will be asked to determine whether Doe was pharmacologically rendered unable to give consent such that she could be subjected to an "attack" in the sense that she was unable to consent.

To prevail upon her claim, Doe must show that employees of Anonymous Hospital deviated from the applicable standard of medical care as to her.[7] The fact-finder should be

_____

[7] Medical malpractice cases are like other negligence actions regarding what must be proven. Ziobron v.

presented with evidence on the applicable standard of care for a physician prescribing psychotropic drugs in a confined setting. Accordingly, the Complaint falls within the purview of the MMA. Partial summary judgment was improvidently granted to Doe on this issue.

Reversed and remanded for further proceedings.

NAJAM, J., and RILEY, J., concur.

---

Squires, 907 N.E.2d 118, 123 (Ind. Ct. App. 2008). Generally, the fact that an injury occurred will not give rise to a presumption of negligence. Ross v. Olson, 825 N.E.2d 890, 892 (Ind. Ct. App. 2005), trans. denied. The plaintiff must show (1) a duty owed to the plaintiff by the defendant; (2) a breach of duty by allowing conduct to fall below the applicable standard of care; and (3) a compensable injury proximately caused by the defendant's breach of duty. Ziobron, 907 N.E.2d at 123. Health care providers must exercise the degree of skill and care ordinarily possessed and exercised by a reasonably skillful and careful practitioner under the same or similar circumstances. Syfu v. Quinn, 826 N.E.2d 699, 703 (Ind. Ct. App. 2005).