FILED

Aug 14 2023, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Michael J. Bruzzeese
SMID Law, LLC
Fishers, Indiana

ATTORNEYS FOR APPELLEE

Kelly K. McFadden
Michael E. O'Neill
Daniel F. Ford
O'Neill McFadden & Willett LLP
Schererville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shane Willingham,<br>*Appellant*,<br><br>v.<br><br>Anderson Center,<br>*Appellee*. | August 14, 2023<br><br>Court of Appeals Case No.<br>23A-CT-459<br><br>Appeal from the Madison Circuit<br>Court<br><br>The Honorable Mark K. Dudley,<br>Judge<br><br>Trial Court Cause No.<br>48C06-2207-CT-91 |

**Opinion by Judge Brown**
Judges Crone and Felix concur.

**Brown, Judge.**

[1] Shane Willingham appeals the dismissal of his complaint and asserts his claim was not governed by the Indiana Medical Malpractice Act. We affirm.

*Facts and Procedural History*

[2] On July 24, 2022, Willingham filed a Complaint for Damages against Anderson Center – St. Vincent Anderson Regional Hospital ("Anderson Center"). The complaint alleged:

> 2. The Anderson Center is a treatment facility for persons with addictions and mental illnesses. It offers outpatient services as well as residential treatment programs.
>
> 3. In July of 2020, Plaintiff, then a minor child, was a resident of The Anderson Center.[1] Plaintiff had checked in for psychological treatment following his most recent suicide attempt.
>
> 4. Plaintiff had brought with him to The Anderson Center a history of mental and emotional issues and previous suicide attempts.
>
> 5. Plaintiff was in need of The Anderson Center's psychological services as a result of suffering a sexual assault at the hands of his step-father as a young boy. The trauma Plaintiff suffered plagued him throughout his young life and contributed to his history of depression, pornography addiction, and suicidal thoughts and attempts.
>
> 6. The Anderson Center holds itself out as being equipped to provide "hope, health and strength" to individuals just like

---

[1] The complaint did not provide Willingham's age. Willingham asserts on appeal that he is "a proverbial 'eggshell plaintiff,' more susceptible to damage due to an inappropriate sexual contact than would be a typical sixteen year old child." Appellant's Brief at 8.

Plaintiff who suffer from addiction and mental illness, and it was this hope, health, and strength Plaintiff sought in taking up residency to receive treatment.

7. Instead, Plaintiff received further emotional damage as a result of The Anderson Center's negligence.

8. The Anderson Center was well aware of Plaintiff's psychological history and owed him a duty of care in his treatment. It failed in that duty.

9. In the early morning of July 25, 2020, an Anderson Center employee located Plaintiff in the room of a female resident. On this and prior occasions the two had had sex.

10. Their relationship should have been impossible had The Anderson Center followed its policies and procedures which include mandatory resident room checks in fifteen-minute intervals and the locking of the doors between the boys' and girls' units. These procedures are designed specifically to prevent unsupervised co-mingling between the residents each of whom, presumably, like Plaintiff, suffer from varying degrees of psychological trauma and mental illness.

11. On information and belief, the motion activated cameras at The Anderson Center were fully functioning the morning of July 25, 2020 and yet detected exactly zero movement indicating that The Anderson Center neglected to perform even a single one of its mandatory resident room checks.

12. On information and belief, after the sexual relationship between the two vulnerable patients was discovered, employees of The Anderson Center attempted to cover up their grossly negligent conduct by falsifying documentation of the room checks.

13. Plaintiff was already in a fragile place mentally and emotionally, hence his seeking help from The Anderson Center. As a result of its negligence, Plaintiff has suffered and

continues to suffer from permanent and irrevocable mental anguish and emotional trauma.

Appellant's Appendix Volume II at 12-14.

[3] In August 2022, Anderson Center filed a motion to dismiss pursuant to Ind. Trial Rule 12(B)(1) arguing that Willingham alleged "what amount[ed] to a breach in the standard of care in a medical setting" and the alleged actions were covered by Indiana's Medical Malpractice Act (the "MMA"). Appellee's Appendix Volume II at 3. It argued Willingham had not convened a medical review panel as required by the MMA and requested the dismissal of the complaint. In a supporting memorandum, Anderson Center argued "[t]here is a clear connection between the alleged negligent conduct and the healthcare relationship" between it and Willingham. *Id.* at 14. In September 2022, Willingham filed a response arguing that his allegations "focused on [Anderson Center's] negligence in the supervision and security of its minor residents not on any particular medical treatment or procedure." *Id.* at 18. On January 26, 2023, the court held a hearing at which it heard argument.

[4] On February 1, 2023, the court issued an order which provided:

### Order Granting the Defendant's Motion to Dismiss

The court, after reviewing the party's briefing and argument grants [Anderson Center's] Motion to Dismiss because [Willingham's] complaint falls within the [MMA]. The complaint alleges a breach of medical care that resulted in damage to Willingham.

The evidence before the court is limited to the parties' pleadings. . . . The complaint alleges that Willingham was an inpatient psychological patient at a facility operated by the Anderson Center. Willingham alleges he was damaged when he was able to leave his room, enter the room of another patient and engage in intercourse with that other patient in contravention of the Anderson Center's policies and procedures. Willingham specifically alleged "The Anderson Center was well aware of Plaintiff's psychological history and owed him a duty of care in his treatment. It failed in that duty." Complaint paragraph 8.

An analogous case is *Anonymous Hospital Inc v. Doe*, 996 N.E.2d 329 (Ind. Ct. App. 2013)[, *trans. denied*]. In *Doe*, the plaintiff was a psychiatric patient at the defendant's facility. While receiving treatment[,] [s]he engaged in sexual activities with another patient. She alleged that she was damaged as a result of these interactions with the other patient. The Court of Appeals ruled that her claim sounded in medical negligence. The Court concluded:

> To prevail upon her claim, Doe must show that employees of Anonymous Hospital deviated from the applicable standard of medical care as to her. The fact-finder should be presented with evidence on the applicable standard of care for a physician prescribing psychotropic drugs in a confined setting. Accordingly, the Complaint falls within the purview of the MMA. Partial summary judgment was improvidently granted to Doe on this issue.

*Id*. at 336.

As in *Doe*, Willingham here is alleging that the Anderson Center failed to adhere to the applicable standard of care in treating him as a patient. An analysis of Willingham's complaint requires inquiry into what medication he was taking or not taking, the level of appropriate supervision for a patient with his presenting symptoms, and whether the policies and procedures regarding room checks and locked doors were appropriate for a patient presenting with Willingham's condition. These all involve medical decision-making

specific to Willingham and as a result, his complaint alleges a claim sounding in medical negligence. The court dismisses Willingham's complaint without prejudice.

Appellant's Appendix Volume II at 2-3.

## *Discussion*

[5] The issue is whether the trial court erred in dismissing Willingham's complaint. Where a trial court rules on a Trial Rule 12(B)(1) motion to dismiss based on a paper record and oral argument, our review is *de novo*. *GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind. 2001). The MMA requires the presentation of the proposed complaint to a medical review panel before an action may be commenced in a court in Indiana. *Cortez v. Ind. Univ. Health Inc.*, 151 N.E.3d 332, 338 (Ind. Ct. App. 2020) (citing *Metz as Next Friend of Metz v. Saint Joseph Reg'l Med. Ctr.-Plymouth Campus, Inc.*, 115 N.E.3d 489, 494 (Ind. Ct. App. 2018) (citing Ind. Code § 34-18-8-4)), *trans. denied*.[2] "Essentially, the [MMA] grants subject matter jurisdiction over medical malpractice actions first to the medical review panel, and then to the trial court." *Id.* (citing *Metz*, 115 N.E.3d at 494 (citations omitted)). The MMA defines "malpractice" as "a tort or breach of contract based on health care or professional services that were provided, or

---

[2] Ind. Code § 34-18-8-4 provides:

> Notwithstanding section 1 of this chapter, and except as provided in sections 5 and 6 of this chapter, an action against a health care provider may not be commenced in a court in Indiana before:
>
> > (1) the claimant's proposed complaint has been presented to a medical review panel established under IC 34-18-10 (or IC 27-12-10 before its repeal); and
> >
> > (2) an opinion is given by the panel.

that should have been provided, by a health care provider, to a patient." Ind. Code § 34-18-2-18. A patient is "an individual who receives or should have received health care from a health care provider, under a contract, express or implied, and includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider." Ind. Code § 34-18-2-22. Health care is "an act or treatment performed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Ind. Code § 34-18-2-13.

[6] In *Howard Reg'l Health Sys. v. Gordon*, the Indiana Supreme Court held:

> Indiana courts understand the [MMA] to cover "curative or salutary conduct of a health care provider acting within his or her professional capacity," *Murphy v. Mortell*, 684 N.E.2d 1185, 1188 (Ind. Ct. App. 1997), but not conduct "unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment." *Collins v. Thakkar*, 552 N.E.2d 507, 510 (Ind. Ct. App. 1990). To determine whether the Act is applicable, the court looks to the substance of a claim. *Van Sice v. Sentany*, 595 N.E.2d 264 (Ind. Ct. App. 1992).
>
> Thus, regardless of what label a plaintiff uses, claims that boil down to a "question of whether a given course of treatment was medically proper and within the appropriate standard" are the "quintessence of a malpractice case." *Id*. at 267 (plaintiff's claims of fraud and battery fell within the [MMA] because the first was essentially a claim that the defendant failed to adhere to a standard of care and the second was a claim that the defendant did not obtain informed consent for a procedure); *Popovich v. Danielson*, 896 N.E.2d 1196, 1202-1204 (Ind. Ct. App. 2008) (though styled as assault and battery, fraud, breach of contract, and defamation, all plaintiff's claims involved defendant's

exercise of professional judgment and involved actions taken while providing medical care and thus the requirements of the [MMA] applied).

By contrast, to fall outside the [MMA] a health care provider's actions must be demonstrably unrelated to the promotion of the plaintiff's health or an exercise of the provider's professional expertise, skill, or judgment. *Kuester v. Inman*, 758 N.E.2d 96 (Ind. Ct. App. 2001); *Collins*, 552 N.E.2d at 510 (Ind. Ct. App. 1990) ([MMA] held inapplicable in cases where the conduct involved was "unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill or judgment").

952 N.E.2d 182, 185-186 (Ind. 2011).

[7]     In *Metz*, this Court held:

To be outside the MMA, "a health care provider's actions must be demonstrably unrelated to the promotion of the plaintiff's health or an exercise of the provider's professional expertise, skill, or judgment." [*Howard*, 952 N.E.2d] at 186. "'[T]he test is whether the claim is based on the provider's behavior or practices while acting in his professional capacity as a provider of medical services.'" *Robertson* [*v. Anonymous Clinic*], 63 N.E.3d [349,] 358 [(Ind. Ct. App. 2016)] (quoting *Madison Ctr., Inc. v. R.R.K.*, 853 N.E.2d 1286, 1288 (Ind. Ct. App. 2006), *trans. denied*)[, *trans. denied*]. We have also noted that:

A case sounds in ordinary negligence [rather than medical negligence] where the factual issues are capable of resolution by a jury without application of the standard of care prevalent in the local medical community. By contrast, a claim falls under the [MMA] where there is a causal connection between the conduct complained of and the nature of the patient-health care provider relationship.

> *Id*. (quoting *Terry v. Cmty. Health Network, Inc.*, 17 N.E.3d 389, 393 (Ind. Ct. App. 2014) (internal citations omitted).

*Metz*, 115 N.E.3d at 495. We have also stated "the current test under Trial Rule 12(B)(1) as to whether the [MMA] applies to specific misconduct is to determine whether that misconduct arises naturally or predictably from the relationship between the health care provider and patient or from an opportunity provided by that relationship." *Martinez v. Oaklawn Psychiatric Ctr., Inc.*, 128 N.E.3d 549, 558 (Ind. Ct. App. 2019), *clarified on reh'g, trans. denied*.

[8] Willingham contends that his claim is not governed by the MMA. He argues "[t]he operative facts center on negligence in the Anderson Center's security and supervision duties, duties willfully undertaken by Anderson Center, duties unrelated to any medical care, and duties not specifically 'prescribed' for [his] treatment." Appellant's Brief at 10. He argues his allegations that Anderson Center failed to adhere to its procedures with respect to resident room checks and keeping the doors between male and female units locked "do not center on 'Health care' as defined by Indiana Code 34-18-2-13." *Id*. at 12. He argues the allegations are not within the expertise of a medical review panel and do not center on whether his particular diagnosis required the security protocols. He asserts the standard of care at issue "is not a medical standard of care, but a standard related to an entity's performance of security protocols it had adopted." *Id*. at 24.

[9] Anderson Center maintains the trial court correctly determined that Willingham's claim is governed by the MMA. It argues his allegations were

based on the behavior and practices of its employees while acting in their professional capacity as providers of medical services to promote the patient's health. It maintains his claim was based on the failure of its employees "to provide the services and procedures put in place as part of his medical treatment." Appellee's Brief at 17. It argues "[t]he fifteen-minute checks are not 'security' checks done just to ensure a patient is in his or her room" but to "make sure the patient is well, has not self-harmed, [and] is not in crisis . . . ." *Id*. It further contends there was a causal connection between the conduct complained of and the nature of the patient-health care provider relationship, "it is clear Willingham is making a claim that Anderson Center had a duty to provide psychological and mental health treatment to him, and that it failed to perform that duty," and "[t]he alleged breach of duty is directly related to the curative conduct of a health care provider . . . ." *Id*. at 20. It notes that Willingham "specifically alleges [it] violated its duty of care in *treatment* to him." *Id*. at 23 (citing Appellant's Appendix Volume II at 13).

[10] The record reveals that Willingham's complaint alleged that Anderson Center is a treatment facility for persons with addictions and mental illnesses and offers residential treatment programs. Willingham alleged that he "checked in for psychological treatment following his most recent suicide attempt," he "had brought with him . . . a history of mental and emotional issues and previous suicide attempts," he "was in need of The Anderson Center's psychological services," and the "trauma [he] suffered plagued him throughout his young life and contributed to his history of depression, pornography addiction, and

suicidal thoughts and attempts." Appellant's Appendix Volume II at 12-13. Willingham essentially asserted that he was placed in a position of undue vulnerability due to the decisions and actions of Anderson Center employees in light of his mental and emotional issues, suicide attempts, psychological trauma, pornography addiction, and need for psychological services. In his complaint, Willingham alleged that he was damaged by Anderson Center's negligence and claimed: "Anderson Center was well aware of [his] psychological history and owed him a duty of care in his treatment. It failed in that duty." *Id*. at 13.

[11] In light of the allegations, we cannot say that the alleged actions by Anderson Center and its employees were demonstrably unrelated to the promotion of Willingham's health or that there is not a causal connection between the alleged actions and the nature of the patient-health care provider relationship. Willingham's breach of duty claim is, in substance, a medical malpractice claim, and accordingly the trial court did not err in granting Anderson Center's motion to dismiss and dismissing the claim without prejudice. *See Anonymous Hosp*., 996 N.E.2d at 331-336 (observing the plaintiff was admitted to a hospital's psychiatric ward for in-patient psychiatric care, at some point she was placed on monitoring where staff were to check on her every fifteen minutes, and she engaged in sexual activity with another patient; noting the plaintiff's "participation in sexual acts . . . was not accomplished by force or threat of force," "the gravamen of [her] complaint is that she was rendered incompetent to make an informed decision regarding sexual conduct because of psychotropic

drugs prescribed for her," and "[i]n other words, she was allegedly placed in a position of undue vulnerability because of decisions made by her treating physician, that is, which medications and what dosage were appropriate for her care while she was confined in close proximity to other patients"; and concluding the complaint fell within the purview of the MMA).

[12]  For the foregoing reasons, we affirm the trial court.

[13]  Affirmed.

Crone, J., and Felix, J., concur.