Patricia POPOVICH, Appellant–
Plaintiff,

v.

John R. DANIELSON, M.D.,
Appellee–Defendant.

No. 64A03–0804–CV–146.

Court of Appeals of Indiana.

Nov. 26, 2008.

Gordon A. Etzler, Megan E. Pikula, Gordon A. Etzler & Associates, Valparaiso, IN, Attorneys for Appellant.

David C. Jensen, Logan C. Hughes, Eichhorn & Eichhorn, LLP, Hammond, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Patricia Popovich appeals the dismissal of her complaint against Dr. John R. Danielson. Because the Medical Malpractice Act governs three of Popovich's claims, she needed to obtain an opinion from a medical review panel prior to filing her complaint, and the trial court properly determined it lacked jurisdiction over those claims. Popovich's fourth claim, for fraud, was insufficiently specific for us to determine whether it falls under the Malpractice Act; as such it did not meet the pleading requirement of Trial Rule 9(B). Accordingly, the trial court properly dismissed that portion of her complaint, and we affirm.

## FACTS AND PROCEDURAL HISTORY

Popovich's verified complaint alleged, in pertinent part:

2. On or about the 16th day of June, 2006, Patricia was involved in a[sic] automobile accident in North Porter County and was transported by medical response transportation and personnel to the emergency room of Porter Hospital in Valparaiso, Indiana, for determination of injuries and medical treatment.

3. In the emergency room, the initial attending physician observed compelling injuries to Patricia's left upper chest and across her lower abdomen indicating seatbelt injuries. Also, Patricia had long deep cuts with pieces of glass embedded in the backs of her legs, believed to be from the vehicle's windows. Blood tests, urinalysis and other medical tests were performed to determine the nature and extent of Patricia's physical injuries. The documentation of attending emergency personnel noted that Patricia was alert, oriented as to persons, places and time, and had clear speech. No tests were done for alcohol or drugs, since there was no indication of either, that the accident was caused because of alcohol and/or drugs, nor were alcohol or drugs a contributing factors [sic] according to the responding Porter County Sherriff [sic] Deputy. Furthermore, the attending medical personnel reports indicated that Patricia was alert, but in excruciating pain. It was determined that she had suffered upper chest injuries, fractured ribs, abdominal pain, back pain, significant lacerations degloving of the flesh on the back of her legs from her knees to her buttocks and embedded glass and dirt. It was deter-

mined in the treatment of her injuries that surgery would be necessary.

4. Because of the nature of her injuries and the need for possible plastic surgery, Patricia was referred to Danielson who was called to perform necessary medical treatment and to relieve the pain and suffering being experienced by Patricia.

5. When Danielson approached Patricia lying on the emergency room gurney to evaluate the injuries to her legs and embedded glass in her upper thigh, Danielson voiced [sic] Patricia in a rude and insolent manner and spoke to her in a demeaning, rude, accusatory and insensitive manner. Patricia immediately asked for some pain medication, which he refused. He then grabbed Patricia by her ankle and in a quick, jerky and rough manner lifted her leg straight in the air over her body and pierced the open flesh with a needle causing excruciating pain from her broken ribs, the embedded glass cuts and bruises to her chest and abdomen, causing Patricia to scream in pain. Patricia asked him to stop any and all treatment. As a response to her request, Danielson stated that she was driving drunk and that is why he refused to give her pain medication.

6. Later, Danielson included in his medical report describing her condition, that Patricia was drunk and not wearing her seatbelt, which caused her extensive injuries. Furthermore, Danielson reported that Patricia displayed disruptive behavior in the emergency room. The medical report of these physical and mental conditions of Patricia was false and contrary to the actual circumstances, the nature of the injuries and her physical condition when she was brought into the emergency room for observation and treatment.

It is believed, and Patricia has reason to believe, that Danielson made the written false statements and representations of her physical and mental condition because Patricia had confronted Danielson in the emergency room about his rude and insolent behavior, his refusal to administer pain medication and because of her decision to refuse any further treatment by him of her injuries.

7. In response to Patricia rejecting Danielson as her attending physician, Patricia believes, and has reason to believe, that Danielson deliberately misrepresented and falsified Patricia's physical condition and mental status in the emergency room by writing false and misleading statements in her medical report knowing that the information contained in the medical reports could be and would be used against Patricia by persons reviewing the medical report, for the purpose of making a reimbursement determination of the cause of accident for coverage for her damaged vehicle, personal medical care expenses, for future matters which would involve the review of her medical report, such as life insurance, health insurance coverage, automobile accident insurance coverage, future medical treatment, and needs and other matters.

8. Danielson made these false and misleading comments in the medical report knowing that Patricia's report is a formal legal document whose contents cannot be changed, modified, amended or deleted and that such a report would be distributed and published to those persons and companies in the commercial and business world who would have reasons to review Patricia's medical reports. These entities and people include potential life insurance companies, health insurance companies, vehicle liability insurance companies, potential employers, future medical insurance pro-

viders and others who would have a qualified legal privilege to review personal medical records.

9. Furthermore, Danielson submitted a medical bill in an excessive amount for services provided for Patricia to her health insurance payer. It is believed that this was either an attempt to defraud the company or to cause confusion or even rejection of claims for medical reimbursement to Patricia. This circumstance in fact caused and is causing Patricia additional costs and expenses in resolving reimbursement.

10. The deliberate and unlawful actions of Danielson, as above described, constitutes common law fraud and misrepresentation, assault and battery of Patricia, violation of Patricia's AHAD Patient Bill of Rights, defamation, slander and breach of Danielson's contractual obligation to accurately and correctly report his medical findings and observations in her medical record. Because of these tortuous [sic] actions, Patricia has suffered and incurred shame, humiliation, mental stress, emotional stress and injury for which Danielson should be held liable and responsible. It is believed that such tortuous [sic] conduct should be valued in the total amount of three hundred thousand dollars and 00/100 ($300,000.00).

Furthermore, because of Danielson's intentional and tortuous [sic] misconduct of a grievous nature with deliberate and intention to cause shame, harassment and financial humiliation with total reckless disregard of the truth of the circumstances and malicious intent of the consequences, punitive damages should be assessed in accordance with law.

Patricia should be reimbursed her attorney fees incurred in bringing this action and reasonable attorney fees would be fifty thousand dollars and 00/100 ($50,000.00).

WHEREFORE, Patricia requests judgment against Danielson for the tortuous [sic] actions and consequences as set forth above, for costs and expenses incurred, including punitive damages for reimbursement of attorney fees and for all other remedies available under the premises.

(App. at 8–12.)

Danielson moved to dismiss Popovich's complaint because Popovich "failed to obtain an opinion rendered by a medical review panel before filing her complaint." (Id. at 13.) Attached to his motion were a memorandum of law and an affidavit demonstrating Danielson was qualified as a "health care provider" under the Indiana Medical Malpractice Act, Ind.Code Art. 34–18, when he treated Popovich in the emergency room.

Popovich's response alleged her complaint against Danielson was "one for defamation of the Plaintiff, not medical malpractice." (App. at 24.) The court held a hearing at which the parties presented legal arguments. It then dismissed Popovich's complaint without prejudice after finding:

1. All of the actions by Defendant as alleged by Plaintiff are related to or arise out of a course of medical treatment rendered to Plaintiff by Defendant. While it appears that some of the actions as alleged by Plaintiff could give rise to an independent tort, this Court now finds that the genesis of the complaint resides under, and as a result of, the medical services rendered by Defendant to Plaintiff.

2. Plaintiff must comply with the statutory requirements of the Indiana Medical Malpractice Act; and, this has not been accomplished.

3. As a result, this Court has no subject matter jurisdiction in this cause and it must be dismissed, without prejudice.

(*Id.* at 7.)

## DISCUSSION AND DECISION

Danielson moved to dismiss for lack of subject matter jurisdiction. A Trial Rule 12(B)(1) motion to dismiss for lack of subject matter jurisdiction questions "whether the type of claim presented falls within the general scope of the authority conferred upon the court by constitution or statute." *Community Hosp. v. Avant*, 790 N.E.2d 585, 586 (Ind.Ct.App.2003). Trial courts have "wide latitude to devise procedures to ferret out the facts relevant to jurisdiction and in weighing the evidence to resolve factual disputes affecting the jurisdictional question." *Id.*

■ Our standard of review of such a decision depends on whether the court "resolved disputed facts, and if so, whether the trial court conducted an evidentiary hearing or ruled on a paper record." *Wayne County Property Tax Assessment Bd. of Appeals v. United Ancient Order of Druids–Grove No. 29*, 847 N.E.2d 924, 926 (Ind.2006). Where, as here, the court ruled on a paper record without an evidentiary hearing, our review is *de novo*. *Id.*

Whether the trial court had jurisdiction over Popovich's complaint depends on whether the complaint stated a claim for malpractice. If the claim was for malpractice, then Popovich should have filed a proposed complaint with the Indiana Department of Insurance and obtained an opinion from a medical review panel before filing a complaint with the trial court. *See*

*Avant,* 790 N.E.2d at 586 (citing Ind.Code § 34–18–8–4 [1]).

■ Under the Medical Malpractice Act, malpractice is "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." Ind.Code § 34–18–2–18. A patient is "an individual who receives or should have received health care from a health care provider, under a contract, express or implied, and includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider." Ind.Code § 34–18–2–22. Health care is "an act or treatment performed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Ind.Code § 34–18–2–13.

[B]y its terms, the Act neither specifically includes nor excludes intentional torts from the definition of malpractice. Rather, the Act applies to conduct, curative or salutary in nature, by a health care provider acting in his or her professional capacity, and is designed to exclude only that conduct "unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment." *Boruff [v. Jesseph,* 576 N.E.2d 1297] at 1298 [Ind. Ct.App.1991], (quoting *Collins [v. Thakkar,* 552 N.E.2d 507] at 510 [Ind. Ct. App.1990] ). It is therefore the substance of a claim, not its caption, which determines whether compliance with the Act is necessary.

---

1. That statute provides: "an action against a health care provider may not be commenced in a court in Indiana before: (1) the claimant's proposed complaint has been presented to a medical review panel established under I.C. 34–18–10, and (2) an opinion is given by the panel." Ind.Code § 34–18–8–4.

*Van Sice v. Sentany,* 595 N.E.2d 264, 266 (Ind.Ct.App.1992) (statutory citations omitted). Furthermore,

> neither the occurrence of the injury at what can generally be described as a healthcare facility nor the plaintiff's status as a patient are dispositive in determining whether the claim sounds in medical malpractice. The rationale for this rule is that a contrary rule would result in an unreasonably broad inclusion of claims that were never intended to fall within the MMA's scope. Thus, in determining whether a claim sounds in medical malpractice the test is whether the claim is based on the provider's behavior or practices while acting in his professional capacity as a provider of medical services.

*Estate of O'Neal ex rel. Newkirk v. Bethlehem Woods Nursing and Rehabilitation Center, LLC,* 878 N.E.2d 303, 311 (Ind.Ct. App.2007), *aff'd on reh'g* 887 N.E.2d 1019 (Ind.Ct.App.2008).

Popovich's complaint alleged "four (4) specific torts: defamation, common law fraud, assault and battery and breach of contractual obligation to accurately and correctly report necessary medical findings and observations in medical records." (Appellant's Br. at 7.) Popovich asserts none of those claims fall under the Medical Malpractice Act. We will address the torts in chronological order as we explain why each asserts malpractice.

■ First is Popovich's claim of assault and battery. Danielson "was called [to the emergency room] to perform necessary medical treatment" on Popovich's legs and thighs, (Appellant's App. at 9 (Complaint at 2, para. 4)), which suffered "significant lacerations degloving of the flesh on the back of her legs from her knees to her buttocks and embedded glass and dirt." (*Id.* at para. 3.) According to Popovich's complaint, when Danielson entered her room, he spoke rudely to her, denied her request for pain medication, and

> then grabbed Popovich by her ankle and in a quick, jerky and rough manner lifted her leg straight in the air over her body and pierced the open flesh with a needle causing excruciating pain from her broken ribs, the embedded glass cuts and bruises to her chest and abdomen, causing Popovich to scream in pain. Popovich asked him to stop any and all treatment.

(*Id.* at para. 5.) Danielson's alleged battery occurred while he was evaluating Popovich's injuries, as he had been called to the hospital to do, and thus is "based on the provider's behavior or practices while acting in his professional capacity as a provider of medical services." *O'Neal,* 878 N.E.2d at 311. Accordingly, this claim falls under the Medical Malpractice Act.[2]

■ Second, Popovich's complaint asserts Danielson defamed her when he "included in his medical report describing her condition, that Popovich was drunk and not wearing her seatbelt, which caused her extensive injuries. Furthermore, Danielson reported that Popovich displayed disruptive behavior in the emergency room." (Appellant's App. at 9–10, Complaint at 2–3, para. 6.) Popovich asserts "Danielson

---

**2.** Popovich's description of Danielson's conduct suggests he displayed "poor bedside manner" or was insensitive in his treatment of Popovich—the reasonableness of which is to be determined by the medical review panel; however, we cannot say his conduct was so "wanton and gratuitous" as to fall outside the Malpractice Act. *Cf. Collins,* 552 N.E.2d at 510 (doctor's purposeful use of medical instruments to induce abortion without patient's consent, after doctor impregnated patient, was so "wanton and gratuitous" that legislature could not have considered it "rendition of health care or professional services").

deliberately misrepresented and falsified" her physical and mental conditions because Popovich "reject[ed] Danielson as her attending physician." (*Id.* at 10, Complaint at 3, para. 7.) However, the record contains evidence suggesting Popovich was injured when she was driving without a seatbelt and after consuming alcohol.[3] Whether Danielson should have concluded, after reading Popovich's medical chart and without doing his own assessment, that Popovich crashed while drunk, questions his "exercise of professional expertise, skill, or judgment." *Collins,* 552 N.E.2d at 510. Accordingly, this claim falls under the Medical Malpractice Act.[4]

■ Third, Popovich alleged Danielson breached his "contractual obligation to accurately and correctly report necessary medical findings and observations in medical records." (Appellant's Br. at 7.) This

claim, like the defamation claim, depends on the extent to which Danielson relied on his review of Popovich's chart prior to his interaction with her and the extent to which such reliance was reasonable. Thus, it needs to be addressed by persons acquainted with the standard practice of specialists called to assist with on-going emergency room cases, *see, e.g., Kuester v. Inman,* 758 N.E.2d 96, 102 (Ind.Ct.App. 2001) ("the sole duty of the medical review panel is 'to express its opinion as to whether or not the evidence supports the conclusion that the defendant . . . acted or failed to act within the appropriate standards of care' "), and it falls under the Malpractice Act.

■ Finally, Popovich alleged Danielson committed common law fraud when he "submitted a medical bill in an excessive amount for services provided for Popovich

---

3. An Emergency Department report handwritten by a nurse indicates Popovich was an "unrestrained driver that was in a single car accident" and was "+ ETOH [unreadable] drinks." (Appellant's App. at 33, Exhibit A) (attached to Popovich's reply to Dr. Danielson's motion to dismiss). ETOH is an acronym for Ethyl Alcohol. *See The Free Dictionary by Farlex,* "ETOH," at http://acronyms. thefreedictionary.com/Etoh (last visited Sept. 2, 2008). Ethyl alcohol is also known as "ethanol" and "is the alcohol of beer, wines, and liquors." Ethanol, at http://www. answers.com/topic/ethanol (last visited Sept. 2, 2008). The Emergency Room Doctor's Intake Report produced at 1:00 a.m. indicates Popovich was thrown from the vehicle because she had not used restraints, and the social history contains a handwritten note indicating "2 martinis tonight" where the form asks about "recent ETOH." (App. at 36.) Finally, the Police Officer's report indicates Popovich was using "No restraint" at the time of the accident. (*Id.* at 43.)

4. Popovich argues Danielson was not a provider of medical services at the time he dictated his report containing the false and defamatory information because "Danielson's notes

indicate that he had completed treatment of . . . Popovich at that time." (Appellant's Br. at 16.) We cannot agree. While Danielson may have finished his direct care of Popovich at the time he made his record, the fact remains he was creating the report of that direct medical care. The information he recorded, presumably, was based on his review of her chart, his assessment of her injuries, and his exercise of professional skill and judgment to determine what to include in the report.

Also, Danielson argues he is immune from a claim of defamation pursuant to Ind.Code § 16–39–8–1, which states "Providers . . . are immune from civil action for libel or slander arising from information or entries made in a patient health record if the information or entries are made in good faith and without malice." As Popovich notes, the next statute's comment that the "chapter applies to mental health records," Ind.Code § 16–39–8–2, could mean that immunity does not apply to other types of medical records. Because we conclude a medical review panel needs to review Popovich's claims to determine whether Danielson's entries were reasonably made in light of standard practice procedures, we do not address this argument.

to her health insurance payer."[5] (Appellant's App. at 11, Complaint at 4, para. 9.) Popovich's complaint did not further explain the basis of her claim the bill sent to her insurer was excessive and fraudulent. We do not know whether Popovich believes Danielson billed for services he did not provide, believes Danielson billed more than customary amounts for the services provided, or believes Danielson should not be permitted to bill for the actions she asserts were assault and battery.

Trial Rule 9(B) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be specifically averred." "In order to allege fraud sufficiently, the pleadings must state the time, the place, the substance of the false representations, the facts misrepresented, and identification of what was procured by fraud." *Abbott v. Bates*, 670 N.E.2d 916, 921 n. 3 (Ind.Ct.App.1996), *reh'g denied.* Popovich did not provide sufficient details in her allegation of fraud to meet the requirements of Trial Rule 9.

Similarly, her lack of specificity prevents us from determining whether this claim falls under the Malpractice Act. If Popovich's claim of excessive billing is grounded in her theory that Danielson's assault and battery did not occur during medical treatment, then the claim is derivative of her malpractice claims and cannot be adequately addressed until after those malpractice claims are adjudicated.

## CONCLUSION

Because a medical review panel needed to first review Popovich's claims of assault and battery, defamation, and "contractual obligation to accurately and correctly report necessary medical findings and observations in medical records," (Appellant's Br. at 7), the trial court properly dismissed them without prejudice.[6] The court also properly dismissed without prejudice her claim of fraud, as that claim was insufficiently specific to meet the requirements of Trial Rule 9(B).

Affirmed.

ROBB, J., and NAJAM, J., concur.

---

5. We note Danielson's brief did not address Popovich's allegation of fraud. Where an appellee fails to address an appellant's argument, it is as if the appellee failed to file a brief. *Ind. Patient's Compensation Fund v. Winkle*, 863 N.E.2d 1, 4 (Ind.Ct.App.2007). In such circumstances, we may reverse if we find *prima facie* error. *In re Paternity of J.C.*, 819 N.E.2d 525, 527 (Ind.Ct.App.2004). *Prima facie* errors are those that appear "at first sight, on first appearance, or on the face of it." *Id.* Application of this standard relieves us of the burden of developing arguments for the appellee. *Id.* "This circumstance does not, however, relieve us of our obligation to decide the law as applied to the facts in the record in order to determine whether reversal is required." *Vukovich v. Coleman*, 789 N.E.2d 520, 524 n. 4 (Ind.Ct.App.2003).

6. Accordingly, Popovich's complaint should have complied with the anonymity provision of Ind.Code § 34–18–8–7, which permits a claimant to commence an action in court while the proposed complaint is being considered by the medical review panel but requires the complaint "not contain any information that would allow a third party to identify the defendant." Ind.Code § 34–18–8–7(a)(1); *see also Kho v. Pennington*, 875 N.E.2d 208, 213–14 (Ind.2007).