# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**ROBERT M. OAKLEY**
**DANIEL K. DILLEY**
Dilley & Oakley, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT G. ZEIGLER**
**MARILYN A. YOUNG**
Zeigler Cohen & Koch
Indianapolis, Indiana

FILED

Sep 26 2014, 9:37 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

SHACARE TERRY,                          )
                                        )
    Appellant-Plaintiff,               )
                                        )
        vs.                         )   No.  49A04-1312-PL-630
                                        )
COMMUNITY HEALTH NETWORK,               )
INC.,                                   )
                                        )
    Appellee-Defendant.                )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Heather A. Welch, Judge
Cause No. 49D12-1305-PL-20721

**September 26, 2014**

**OPINION - FOR PUBLICATION**

**ROBB, Judge**

Shacare Terry was admitted at Community Hospital ("Community") while unconscious. During her treatment, it was discovered that Terry was under the influence of a drug and suffered from possible vaginal trauma. The physician performed a medical evaluation but did not complete a rape kit or preserve possible evidence of sexual assault. While treating Terry, staff members of the hospital also made several derogatory statements about her.

Terry sued Community for breach of duty and intentional infliction of emotional distress ("IIED"), but the trial court dismissed the case for lack of subject matter jurisdiction. Terry now appeals, raising two issues that we consolidate and restate as one: whether the trial court erred in determining that it lacked subject matter jurisdiction over Terry's claims because they fall within the terms of the Indiana Medical Malpractice Act ("the Act") and Terry did not follow the Act's procedures before filing her claims in the trial court. Concluding that the trial court did not have subject matter jurisdiction over Terry's breach of duty claim, we affirm that portion of the trial court's order. Concluding, however, that the trial court had subject matter jurisdiction over Terry's IIED claim, we reverse that portion of the court's order and remand.

## Facts and Procedural History[1]

On the night of August 5, 2011, Terry celebrated her twenty-first birthday by going to a club. While at the club, and without her knowledge, Terry was given phencyclidine,

---

[1] We note that all facts are stated as alleged in the complaint and we merely assume they are true to decide a question of law. See Doe by Roe v. Madison Ctr. Hosp., 652 N.E.2d 101, 103 (Ind. Ct. App. 1995).

a drug that has been associated with date rape. At some point, Terry blacked out and was taken to Community where its emergency department treated her. Both a full body exam and a toxicology screening were performed. During the exam, the physician noted possible vaginal trauma but did not complete a rape kit. No evidence for a rape investigation was preserved, and the incident was not reported. Terry also was not informed that she may have been raped, and it is unclear as to how she gained this knowledge. Because no evidence of a rape was preserved, the Indianapolis Metropolitan Police Department could not thoroughly investigate the incident.

While being treated at Community, Terry fell victim to several derogatory remarks. Staff members called Terry an "addict" and told her that they did not "like treating addicts." Appellant's Appendix at 3. A staff member also made light of the incident by writing the words "Happy Birthday" next to the physician's notation regarding Terry's possible vaginal trauma. Id. at 8. These actions caused Terry to suffer from feelings of guilt and self-blame with respect to her predicament. Id. at 4.

Terry filed a complaint in the trial court, alleging two counts against Community: 1) breach of duty, and 2) intentional infliction of emotional distress. Community filed a motion to dismiss the complaint, arguing that the court lacked subject matter jurisdiction over the case because neither claim had first been filed with the Indiana Department of Insurance as required by the Act. After a hearing, the trial court granted Community's motion to dismiss for lack of subject matter jurisdiction, concluding that Terry's claims sounded in medical malpractice and were subject to the requirements of the Act. Terry now appeals.

## I. Standard of Review

"Subject-matter jurisdiction is the power of a court to hear and decide a particular class of cases." Title Servs, LLC v. Womacks, 848 N.E.2d 1151, 1154 (Ind. Ct. App. 2006). The issue of subject matter jurisdiction is resolved by determining whether a claim falls within the general scope of statutory authority. Id. In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider the complaint, the motion, and any evidence submitted in support. GKN Co. v. Magness, 744 N.E.2d 397, 400 (Ind. 2001). This court's standard of review is a function of what occurred in the trial court. Id. at 401.

> [T]he standard of review is dependent upon: (i) whether the trial court resolved disputed facts; and (ii) if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a paper record. If the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law. Under those circumstances no deference is afforded to the trial court's conclusion . . . .

Scheub v. Van Kalker Family Ltd. P'ship, 991 N.E.2d 952, 956 (Ind. Ct. App. 2013) (citations omitted). Thus, in this case where the facts are not in dispute and the only question is the application of law to the facts, we review de novo. Id.

## II. Indiana Medical Malpractice Act

The Act authorizes a patient who has a claim for bodily injury or death on account of medical malpractice[2] to file a complaint in any court with jurisdiction. Ind. Code § 34-

---

[2] Malpractice is a "tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." Ind. Code § 34-18-2-18.

18-8-1. Indiana Code section 34-18-8-4 states, however, that "an action against a health care provider may not be commenced in a court in Indiana before: (1) the claimant's proposed complaint has been presented to a medical review panel . . . and (2) an opinion is given by the panel." "Until the panel issues its opinion, the trial court has no jurisdiction to hear and adjudicate the claim." Stafford v. Szymanowski, 13 N.E.3d 890, 897 (Ind. Ct. App. 2014).

The Act covers "curative or salutary conduct of a health care provider acting within his or her professional capacity, but not conduct unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment." Howard Reg'l Health Sys. v. Gordon, 952 N.E.2d 182, 185 (Ind. 2011) (emphasis added) (citation and quotation marks omitted). When deciding whether a claim falls under the provisions of the Act, "we are guided by the substance of a claim to determine the applicability of the Act." Doe by Roe v. Madison Ctr. Hosp., 652 N.E.2d 101, 104 (Ind. Ct. App. 1995). Our courts have held the Act applied to a variety of claims that do not look like traditional medical malpractice. See, e.g., Howard, 952 N.E.2d at 186 (holding the Act was applicable to a healthcare provider's duty to maintain medical records); Popovich v. Danielson, 896 N.E.2d 1196, 1202 (Ind. Ct. App. 2008) (holding the Act applied to a defamation claim), trans. denied. We have also held the Act did not apply in a variety of instances where the claim did look more like medical malpractice. See, e.g., Murphy v. Mortell, 684 N.E.2d 1185, 1188 (Ind. Ct. App. 1997) (holding that the Act did not apply to a sexual battery claim against a hospital when a therapy technician molested a patient), trans. denied; Doe by Roe, 652 N.E.2d at 104 (holding that the Act did not apply to assault, battery, and IIED

claims against hospital when a counselor coerced patient into having sex). Looking at these cases together, we reiterate that the "fact that the alleged misconduct occurs in a healthcare facility" or that "the injured party was a patient at the facility," is not dispositive in determining whether the claim sounds in medical malpractice. Madison Ctr., Inc. v. R.R.K., 853 N.E.2d 1286, 1288 (Ind. Ct. App. 2006), trans. denied. "[T]he test is whether the claim is based on the provider's behavior or practices while acting in his professional capacity as a provider of medical services." Id. (quotation marks omitted). We also noted more recently that:

> A case sounds in ordinary negligence [rather than medical negligence] where the factual issues are capable of resolution by a jury without application of the standard of care prevalent in the local medical community. By contrast, a claim falls under the Medical Malpractice Act where there is a causal connection between the conduct complained of and the nature of the patient-health care provider relationship.

B.R. ex rel. Todd v. State, 1 N.E.3d 708, 714-15 (Ind. Ct. App. 2013) (citations omitted), trans. denied.

The record below established that Terry was a patient of Community Hospital and that Community Hospital is a qualified healthcare provider covered by the Act. Nonetheless, Terry contends her claims are not medical negligence claims subject to the Act. To determine whether it was erroneous for the trial court to grant Community's motion to dismiss for lack of subject matter jurisdiction, we must look at the substance of each claim.

A. Breach of Duty

The trial court found that Community's duty to Terry arose out of the provision of medical services, and therefore, Terry's breach of duty claim was in substance a claim for medical malpractice. We agree.

Terry argues that once Community had a reasonable suspicion that she suffered from rape, Community had a duty to 1) notify law enforcement of Terry's possible rape,[3] 2) preserve evidence to aid in an investigation and prosecution of the possible rape,[4] and 3) notify Terry that she was a possible rape victim.[5] She argues none of these duties arose out of an act of medical negligence, nor did the harm caused by them. Under any of these theories, we must look to the substance of the claim. Doe by Roe, 652 N.E.2d at 104.

Terry's medical evaluation consisted of a full body exam and a toxicology screening. While performing that evaluation, the doctor completed a diagnostic report. These services were provided so the physician could properly diagnose Terry and to promote Terry's health. These services were curative and salutary. See Howard Reg'l Health Sys., 952 N.E.2d at 186. In deciding what tests to run, what symptoms to look for, and how to treat Terry, the physician relied on his professional expertise, judgment, and

---

[3] Terry's theory that Community breached its duty by failing to report the possible rape to law enforcement derives from Indiana Code sections 12-10-3-2(a) and 12-10-3-9(a). Under those statutory provisions, a healthcare provider may be required to make a report if it has reason to believe the patient is an endangered adult.

[4] Terry's theory that Community breached its duty to preserve evidence derives from Indiana Code section 35-44.1-2-2(a)(3), which makes it an obstruction of justice for a person to intentionally dispose of evidence used in an investigation.

[5] Terry also claims that Community breached its general duty of reasonable care.

skill.  See id.  He used his years of training to determine what steps to take.  These decisions—along with the decision not to complete a rape kit, the failure to conclude that Terry was raped, and the failure to report a rape—were made by the physician while acting in his professional capacity as a provider of medical services.  See Anonymous Hosp., Inc. v. Doe, 996 N.E.2d 329, 333 (Ind. Ct. App. 2013).  Any dispute about the physician's judgment in treating Terry is an appropriate issue for the medical review panel to decide; in this instance, a jury may well need to apply the standard of care that is appropriate for treating similar patients in the local medical community.  See B.R. ex rel. Todd, 1 N.E.3d at 714-15.  The relationship between the healthcare provider and patient on these facts was for the purpose of emergency medical treatment; this relationship is the direct cause of Terry's claim.

Concluding that Terry's breach of duty claim is, in substance, a medical malpractice claim, the trial court did not have jurisdiction pursuant to Indiana Code section 34-18-8-4, and the trial court did not err in dismissing the claim.

### B.  Intentional Infliction of Emotional Distress

The trial court also found that the statements made to Terry by Community staff members arose out of the provision of medical professional services, and therefore, Terry's IIED claim was in substance a claim for medical malpractice.

Terry alleges that the derogatory statements caused her emotional distress.  She argues that the staff members' decisions to refer to her as an "addict" and write "Happy Birthday" next to the physician's note of possible vaginal trauma were not made within the

provision of medical services; not made to promote her health; not made with professional expertise, judgment, or skill; and not curative or salutary.

Although the Act does not specifically exclude intentional acts from the definition of malpractice, Doe by Roe, 652 N.E.2d at 104, we think the Act is inapplicable to these facts. The comments made to Terry raise a factual issue capable of resolution by a jury without application of the prevalent standard of care in the local medical community. See B.R. ex rel. Todd, 1 N.E.3d at 714-15. And these statements were not made while acting in a professional capacity as the provider of medical services. See Anonymous Hosp., Inc., 996 N.E.2d at 333.

The statements made to Terry are different than the allegedly defamatory statements we considered in Popovich. In Popovich, we applied the Act to a physician's notes that the patient was drunk and disruptive and had not been wearing a seatbelt when she was involved in an accident that sent her to the hospital, because the statements were made for the purpose of medical diagnosis. 896 N.E.2d at 1202-03. Accordingly, we affirmed the trial court's dismissal of the plaintiff's claim for lack of subject matter jurisdiction. Id. at 1204. Here, however, the statements made to Terry were made only to disparage her and were unrelated to medical treatment.

We also held in Madison Ctr., Inc. v. R.R.K., that neither the occurrence of an injury at a healthcare facility nor the existence of a patient-healthcare provider relationship is dispositive. 853 N.E.2d at 1288-89. The fact that Terry was a patient or that the same staff members who disparaged her also may have treated her is also not dispositive. The

statements made to Terry were not caused by the patient-healthcare provider relationship: they were not necessary to the proper diagnosis or treatment of Terry.

Our decision in OB-GYN Assoc. of N. Indiana, P.C. v. Ransbottom, 885 N.E.2d 734 (Ind. Ct. App. 2008), trans. denied, is also instructive. In OB-GYN, we held that the Act was inapplicable to laser hair removal treatment even though it was provided by a registered nurse within an OB-GYN office; we reasoned that laser hair removal treatment could be and often was provided and administered by individuals without healthcare credentials, such as medical degrees, medical licensure, or medical certification. Id. at 739. The derogatory statements made by Community staff members could have been made by individuals without medical credentials, too. The statements were not intended to promote Terry's health or provide curative or salutary treatment; nor were they made with the staff members' professional expertise, judgment, or skill. See Howard Reg'l Health Sys., 952 N.E.2d at 186. Accordingly, Terry's IIED claim is not a facade for medical malpractice.

We conclude that the Indiana legislature did not intend for the Act to apply to scenarios of this kind. Accordingly, we believe the trial court had subject matter jurisdiction over the IIED claim and erred in concluding otherwise.

## Conclusion

Concluding that the trial court did not err in dismissing Terry's breach of duty claim for lack of subject matter jurisdiction, we affirm that portion of its order. Concluding that the trial court did commit error in dismissing Terry's IIED claim for lack of subject matter jurisdiction, however, we reverse the trial court's dismissal of that claim and remand for

further proceedings.

Affirmed in part, and reversed and remanded in part.

BAKER, J., and KIRSCH, J., concur.