## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 30 2016, 6:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jeffrey S. Wrage
Colby A. Barkes
Blachly, Tabor, Bozik & Hartman LLC
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Michael E. O'Neill
Marian C. Drenth
Kathleen M. Erickson
O'Neill McFadden & Willet LLP
Schererville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ricardo S. Trevino, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Comprehensive Care, Inc., <br> *Appellee-Defendant.* | December 30, 2016 <br><br> Court of Appeals Case No. 45A05-1603-CT-683 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Bruce D. Parent, Judge <br><br> Trial Court Cause No. 45D04-1508-CT-156 |

**Mathias, Judge.**

[1] The Lake Superior Court granted a motion to dismiss filed by Comprehensive Care, Inc. ("CCI") in a negligence action filed by Ricardo S. Trevino

("Trevino"). Trevino appeals and argues that the trial court erred in concluding that his complaint fell within the scope of the Indiana Medical Malpractice Act, which would have required him to file a proposed complaint with a medical review panel before filing his complaint in court. Concluding that the acts alleged in Trevino's complaint do fall within the scope of the Act, we affirm.

## Facts and Procedural History

At the time relevant to this appeal, CCI was a corporation licensed to practice physical and occupational therapy medicine in Indiana. Trevino had sustained a work-related injury to his left ankle and, on December 8, 2014, went to CCI for a return-to-work examination. During the examination, a CCI employee instructed Trevino to step onto stacked exercise steps. When he did so, the steps slipped out from under him, causing him to fall. As a result of the fall, Trevino sustained serious injury to his left knee.

On August 14, 2015, Trevino filed a complaint against CCI alleging the above facts and claiming that, as a direct and proximate result of CCI's negligence, Trevino had sustained "serious, permanent, and debilitating injuries to his left knee, and has experienced and will continue to experience in the future, physical pain and the loss of enjoyment of life as a result of those injuries, as well as past and future lost wages and diminished earning capacity." Appellant's App. p. 9. Trevino's complaint sought compensatory damages, costs, and other just and proper relief. *Id.*

[4] After receiving an enlargement of time in which to file its response, CCI submitted an answer to Trevino's complaint on October 9, 2015. On November 13, 2015, CCI filed a motion to dismiss for lack of subject matter jurisdiction, arguing that Trevino's claim fell within the scope of the Medical Malpractice Act. Since Trevino had not submitted a claim to a medical review panel, CCI argued that the trial court lacked subject matter jurisdiction to hear Trevino's complaint.

[5] Trevino filed a response on January 6, 2016, arguing that his complaint sounded in premises liability, not medical malpractice, and was therefore not in the scope of the Act. The trial court held a hearing on the motion to dismiss on February 29, 2016, at the conclusion of which it took the matter under advisement. Later that same day, the trial court issued an order on the motion to dismiss, which provides in relevant part:

> 9. Trevino provided the Court with a series of cases that had to do with premises liability, not from the provision of medical services. Yet, Trevino's complaint put forward the following facts which CCI did not contest:
>
> a. CCI was at all times relevant "duly licensed to practice physical and occupational therapy medicine in the state of Indiana."
>
> b. CCI was at all times relevant a corporation "engaged in the business of providing physical therapy and back to work examinations."
>
> c. All negligent acts and omissions of CCI were performed or omitted by employees, agents, and/or representatives "while they were acting within the scope of their employment."

d. On the date in question, Trevino appeared at CCI for a return-to-work examination related to an injury to his left ankle.

e. CCI, while performing a return-to-work exam requested that Trevino "step upon stacked exercise steps, which slipped out from under him, causing him to fall and receive severe and permanent injury."

10. To this Court, the provisions of a medical examination to Trevino, related to his injury, by CCI – a company that engaged in the provision of occupational therapy medicine – instructing Trevino to make specific assessable movements was the provision of medical services as a matter of law under the test provided by Popovich v. Danielson, [896 N.E.2d 1196 (Ind. Ct. App. 2008)], even under the very stringent limitation as on a claimant's rights provided by the Court of Appeals in Peters v. Cummings, [790 N.E.2d 572 (Ind. Ct. App. 2003)].

11. Accordingly, this Court [finds] as a matter of law [that] it does not possess jurisdiction over the parties to hear this matter pursuant to T.R. 12(B)(1) and the Indiana Medical Malpractice Act.

Tr. pp. 26-27. Trevino now appeals.

## Standard of Review

A trial court ruling on a motion to dismiss for lack of subject matter jurisdiction under Trial Rule 12(B)(1), unlike a trial court ruling on a motion to dismiss under Trial Rule 12(B)(6), may consider not only the complaint but also any affidavits or evidence submitted in support. *B.R. ex rel. Todd v. State*, 1 N.E.3d 708, 711 (Ind. Ct. App. 2013). If such evidence is presented, the trial court may weigh the evidence to resolve the jurisdictional issue. *Id*. On appeal, our standard of review depends on what occurred in the trial court, that is, whether

the trial court resolved disputed facts; and if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a "paper record." *Id*.

> If the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law. Under those circumstances no deference is afforded the trial court's conclusion because appellate courts independently, and without the slightest deference to trial court determinations, evaluate those issues they deem to be questions of law. Thus, we review *de novo* a trial court's ruling on a motion to dismiss under Trial Rule 12(B)(1) where the facts before the trial court are undisputed.

> If the facts before the trial court are in dispute, then our standard of review focuses on whether the trial court conducted an evidentiary hearing. Under those circumstances, the court typically engages in its classic fact-finding function, often evaluating the character and credibility of witnesses. Thus, where a trial court conducts an evidentiary hearing, we give its factual findings and judgment deference. And in reviewing the trial court's factual findings and judgment, we will reverse only if they are clearly erroneous. Factual findings are clearly erroneous if the evidence does not support them, and a judgment is clearly erroneous if it is unsupported by the factual findings or conclusions of law.

> However, where the facts are in dispute but the trial court rules on a paper record without conducting an evidentiary hearing, then no deference is afforded the trial court's factual findings or judgment because under those circumstances a court of review is in as good a position as the trial court to determine whether the court has subject matter jurisdiction. Thus, we review *de novo* a trial court's ruling on a motion to dismiss where the facts before the court are disputed and the trial court rules on a paper record.

*GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind. 2001) (citations and internal quotations omitted).

[7] Here, it appears that the facts are essentially undisputed. Moreover, although the trial court held a hearing on the motion to dismiss, the hearing was simply an oral argument, as the parties presented no evidence and no witnesses were sworn. Accordingly, we apply a *de novo* standard of review based on the paper record before us. *See B.R. ex rel. Todd*, 1 N.E.3d at 712 (applying *de novo* standard where trial court held hearing at which parties made legal arguments and did not present evidence) (citing *Popovich v. Danielson*, 896 N.E.2d 1196 (Ind. Ct. App. 2008)).

## The Indiana Medical Malpractice Act

[8] The Medical Malpractice Act authorizes a patient who has a claim for bodily injury or death due to medical malpractice to file a complaint in any court with jurisdiction. Ind. Code § 34-18-8-1; *Terry v. Cmty. Health Network, Inc.*, 17 N.E.3d 389, 393 (Ind. Ct. App. 2014). Indiana Code section 34-18-8-4 provides that "an action against a health care provider may not be commenced in a court in Indiana before: (1) the claimant's proposed complaint has been presented to a medical review panel . . . and (2) an opinion is given by the panel." Thus, until a medical review panel has issued its opinion, the trial court has no jurisdiction to hear and adjudicate the claim. *Terry*, 17 N.E.3d at 393; *see also B.R. ex rel. Todd*, 1 N.E.3d at 713 ("simply said, the Act grants subject matter

jurisdiction over medical malpractice actions first to the medical review panel, and then to the trial court.").[1]

[9] We further observe that, "'the statutory procedures for bringing a medical malpractice action are in derogation of common law, and as such, they are to be strictly construed against limiting a claimant's right to bring suit.'" *B.R. ex rel. Todd*, 1 N.E.3d at 713 (quoting *Weldon v. Universal Reagents, Inc.*, 714 N.E.2d 1104, 1107 (Ind. Ct. App. 1999)). When our General Assembly enacts a statute in derogation of common law, we presume that the legislature is aware of the common law, and does not intend to make any change beyond what is declared in express terms or by unmistakable implication. *Id.*

[10] As explained in *B.R. ex rel. Todd*,

"Malpractice" is defined as "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." I.C. § 34-18-2-18. A "patient" is "an individual who receives or should have received health care from a health care provider, under a contract, express or implied, and includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider." I.C. § 34-18-2-22. And "health care" is "an act or treatment performed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on

---

[1] There is an exception to the requirement that a complaint for medical malpractice be submitted to a medical review panel if the plaintiff's complaint includes a declaration that the plaintiff seeks damages of $15,000 or less. Ind. Code § 34-18-8-6(a). If such a declaration is included, the case may be commenced in the trial court without first submitting the complaint to a medical review panel. *Id.*

behalf of a patient during the patient's medical care, treatment, or confinement." I.C. § 34-18-2-13.

1 N.E.3d at 713.

[11] "The Act covers 'curative or salutary conduct of a health care provider acting within his or her professional capacity, but not conduct unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment.'" *Terry*, 17 N.E.3d at 393 (quoting *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 185 (Ind. 2011)). When deciding whether a claim falls under the provisions of the Medical Malpractice Act, we are guided by the substance of a claim to determine the applicability of the Act. *Id*.

[12] The fact that the alleged misconduct occurs in a healthcare facility, or that the injured party was a patient at the facility, is not dispositive in determining whether the claim sounds in medical malpractice. *Id*. (citing *Madison Ctr., Inc. v. R.R.K.*, 853 N.E.2d 1286, 1288 (Ind. Ct. App. 2006)). Instead, the test is whether the claim is based on the provider's behavior or practices while acting in his professional capacity as a provider of medical services. *Id*. Or, put differently, "A case sounds in ordinary negligence where the factual issues are capable of resolution by a jury without application of the standard of care prevalent in the local medical community." *Anonymous Hosp., Inc. v. Doe*, 996 N.E.2d 329, 333 (Ind. Ct. App. 2013). Thus, we have held that the Medical Malpractice Act was not intended to extend to cases of ordinary negligence or premises liability. *Pluard ex rel. Pluard v. Patients Comp. Fund*, 705 N.E.2d 1035, 1037 (Ind. Ct. App. 1999).

[13] Application of these tests has resulted in "'hairline distinctions between claims that sound in medical negligence and those that sound in ordinary negligence.'" *Preferred Prof'l Ins. Co. v. West*, 23 N.E.3d 716, 727 (Ind. Ct. App. 2014), *trans. denied* (quoting *Doe*, 996 N.E.2d at 333). More recent decisions of this court have offered the following distinction when facing the issue of whether a claim falls within the purview of the Medical Malpractice Act:

> A case sounds in ordinary negligence [rather than medical negligence] where the factual issues are capable of resolution by a jury without application of the standard of care prevalent in the local medical community. By contrast, a claim falls under the Medical Malpractice Act where there is a causal connection between the conduct complained of and the nature of the patient-health care provider relationship.

*West*, 23 N.E.3d at 727 (quoting *Doe*, 996 N.E.2d at 333) (brackets in original); *accord Terry v. Cmty. Health Network, Inc.*, 17 N.E.3d 389, 393 (Ind. Ct. App. 2014); *B.R. ex rel. Todd*, 1 N.E.3d at 714-15.

## Discussion and Decision

[14] In the present case, Trevino argues that his claim of negligence does not require resolution of the applicable medical standard of care and therefore does not fall within the purview of the Medical Malpractice Act. We disagree. Applying the above-mentioned standard to the facts of this case, we conclude that there is a causal connection between the conduct complained of—Trevino being instructed to step upon stacked exercise steps, which slipped out from under him—and the nature of the patient-provider relationship. It is not Trevino's

status as a patient, which he concedes, that is dispositive, nor is it dispositive that the accident occurred on hospital property. Instead, it is dispositive that Trevino was injured while performing an activity that he was instructed to do by his health-care provider, a health care provider who falls under the Medical Malpractice Act, while undergoing a medical test.

[15] We therefore find unavailing Trevino's citation to *Winona Memorial Foundation of Indianapolis v. Lomax*, 465 N.E.2d 731 (Ind. Ct. App. 1984). In that case, the plaintiff Lomax went to a hospital to undergo physical therapy in a large pool. Before she did so, she was instructed to change her clothes in a dressing room adjacent to the pool area. On her way from the dressing room to the pool area, Lomax tripped and fell when she caught her foot on a floorboard that protruded from the floor. No hospital employee was assisting Lomax when she fell, and no medical treatment or physical therapy was rendered to her before or at the time of the fall. Lomax sued the hospital, alleging negligence in the maintenance of the floor. The hospital moved to dismiss the complaint for failure to comply with the review provisions of the Medical Malpractice Act, which the trial court denied.

[16] On appeal, the hospital argued that Lomax's claim of negligence fell within the scope of the Act. Our court disagreed. After going through the history of the Medical Malpractice Act, the court observed that the conditions which led to the enactment of the Act had nothing to do with the sort of liability a health care provider risks when a patient, or anyone else, is injured by the negligent maintenance of the provider's business premises. *Id*. at 739. The court further

noted that matters such as the maintenance of reasonably safe premises are within the common knowledge and experience of the average person, such that there is no need to present this question to the experts on a medical review panel, who "are no more qualified as experts on such matters than the average juror." *Id*. at 740. Because Lomax did not frame her claim for relief as a failure to provide her with adequate medical care or treatment, but instead framed it as one of premises liability, her complaint could "not possibly be construed as alleging the sort of negligence that the Medical Malpractice Act was intended to cover. *Id*. at 742.

[17]    In contrast, here Trevino did not simply trip on a poorly maintained floor while unattended. He fell while performing an exercise that his health care provider instructed him to do while undergoing a physical examination. To determine whether CCI was liable would require the trier of fact to determine whether the provider acted within the applicable standard of care for the healthcare provider.

[18]    Accordingly, we also find Trevino's citation to *Pluard v. Patients Compensation Fund*, 705 N.E.2d 1035 (Ind. Ct. App. 1999), to be unpersuasive. In that case, the plaintiff was preparing to undergo a circumcision the day after his birth. As a nurse's assistant positioned a surgical lamp over the infant, the lamp became detached from the wall, fell on the child, and injured his face and head. The child's parents filed suit on his behalf and reached a settlement agreement with the hospital. The parents then petitioned for payment of excess damages from the Patient's Compensation Fund. The Fund argued that Pluard had no

standing to seek damages because his injuries did not sound in medical malpractice but rather in premises liability. The trial court granted summary judgment in favor of the Fund, and Pluard appealed.

[19] On appeal, Pluard argued that his case was distinguishable from that in *Lomax* because the plaintiff in *Lomax* tripped and fell while unattended by medical personnel whereas he was injured while being attended by a nurse's assistant under the control and supervision of a physician while being prepared for a medical procedure. The *Pluard* court disagreed, noting that the assistant's manipulation of the light, while close in time to the light's falling, was not alleged to have caused his injuries. *Id*. at 1038. Instead, the court reasoned, the injury occurred because the light was not properly attached to the wall. *Id*. "Put another way, the duty to secure the light, and even the nurses' assistant's duty to position it, did not involve a health care decision involving the exercise of professional skill or judgment. Instead, it involved the general duty to maintain safe premises and equipment."[2] *Id*.

[20] In contrast, here there is no allegation that the exercise steps slipped due to improper maintenance of the building or premises. If Trevino had instead slipped on the steps leading to the building or the stairs inside the building, his case would be more on point with *Pluard*. However, Trevino alleged that he was

---

[2] Judge Sullivan dissented, believing that the question depended "upon whether or not the nurse was negligent in the manner in which she positioned the lamp and whether that negligence, if any, was a proximate cause of the injury. *Id*. at 1039 (Sullivan, J., dissenting).

instructed by CCI personnel to step onto stacked exercise steps, which then slipped out from under him, causing him to fall. This is distinct from a nurse manipulating a lamp that falls off the wall.

[21] Lastly, Trevino cites *Community Hospital v. Avant*, 790 N.E.2d 585 (Ind. Ct. App. 2003). In *Avant*, the plaintiff sued the hospital after he injured himself while engaged in a personal training program that the professional trainer had designed for him. The trainer was employed by a health club owned and maintained by the hospital. The defendants filed a motion to dismiss contending that the complaint alleged medical malpractice and that the trial court lacked jurisdiction because Avant had not presented his claim to a medical review panel. The trial court denied the motion to dismiss and the defendants brought an interlocutory appeal.

[22] On appeal, this court affirmed the trial court's denial of the defendants' motion to dismiss. The court concluded that Avant was not a client of the health club owned by the hospital and therefore did not qualify as a "patient" as that term is defined by the Medical Malpractice Act. *Id*. at 587. There was no evidence that Avant was under a physician's orders to start the training regimen at the club as part of a medical treatment plan. *Id*. "Therefore, the trial court correctly assumed subject matter jurisdiction over the claim." *Id*.

[23] Yet again, we find this case to be distinguishable. The court in *Avant* held that the plaintiff was not a "patient" as that term is defined by the Medical

Malpractice Act. Here, however, Trevino concedes that he is a patient.[3] Moreover, unlike in *Avant*, it was alleged that Trevino acted under the instruction of his healthcare provider, whereas in *Avant*, there was no indication that the plaintiff was under the orders of his healthcare provider to start the exercise regimen as part of a medical treatment plan.

[24] We find support for our holding in *Putnam County Hospital v. Sells*, 619 N.E.2d 968 (Ind. Ct. App. 1993), a case cited by CCI. In *Sells*, the plaintiff had undergone a tonsillectomy at the defendant hospital and was taken to the recovery room while still under anesthesia. The rails on Sells' bed had not been raised, and she fell from the bed, injuring her face. Sells sued the hospital without first filing a claim with a medical review panel, and the hospital moved to dismiss the claim for lack of subject matter jurisdiction. The trial court denied the motion, and the hospital appealed.

[25] On appeal, this court held that the complaint did sound in medical malpractice, not ordinary negligence or premises liability. *Id*. at 971. In so holding, the court noted that Sells' allegation of negligence was based on failing to ensure that the railings were in place on her recovery room bed. *Id*. This, the court held, was not an allegation of faulty premises or equipment but instead challenged the "health care decision" the hospital made regarding Sells while she was under anesthesia. *Id*. Sells' complaint also contained other references to her medical

---

[3] *See* Appellant's Br. p. 7 ("Trevino is a patient of the facility and it is undisputed CCI is a qualified health care provider.").

care and treatment: not only was she under anesthesia, she alleged that the hospital failed to properly train and supervise its staff to monitor patients after surgery, that the hospital failed to properly monitor her in the recovery room, and that the hospital failed to take steps to prevent her from injuring herself while under anesthesia. "In essence, Sells' complaint alleg[ed] that the Hospital's acts or omissions fell below the appropriate standard of care." *Id.*

[26] The same is true here. Trevino alleged that CCI was licensed to practice physical and occupation therapy medicine, that CCI's agents or employees acted while within the scope of their employment, and that, while undergoing a return-to-work examination, he was instructed to step on the exercise steps that slipped out from under him, causing him to fall. The gravamen of Trevino's complaint is not premises liability, but rather that his physical therapist acted negligently in either setting up the exercise steps or instructing Trevino, a man with a knee injury, to step on the exercise steps. Thus, his claim is based on the provider's behavior or practices while acting in his professional capacity as a provider of medical services. *See Terry*, 17 N.E.3d at 393. Put differently, there is a causal connection between the conduct of which Trevino complained and the nature of the patient-healthcare provider relationship. *See West*, 23 N.E.3d at 727; *accord Terry*, 17 N.E.3d at 393; *B.R. ex rel. Todd*, 1 N.E.3d at 714-15; *Doe*, 996 N.E.2d at 333.

## Conclusion

[27] In summary, we hold that there was a causal connection between the conduct of which Trevino complained and the nature of the patient healthcare provider

relationship. Therefore, Trevino's complaint falls within the scope of the Medical Malpractice Act. Because Trevino did not submit his claim to a medical review panel, the trial court was without jurisdiction to hear Trevino's claim. We accordingly affirm the order of the trial court granting CCI's motion to dismiss for lack of subject matter jurisdiction.

[28] Affirmed.

Robb, J., and Brown, J., concur.